# Adler *v*. Prestwood & Knowles.

## *Action of Detinue.*

1. *Grant of lands by Congress in aid of railroad; title acquired by State; statute of limitations.*—Under the act of Congress of June 3, 1856, granting lands to the State of Alabama in aid of certain railroads, (11 U. S. Statutes at Large, p. 17), the legal title to the lands granted vested in the State at once for the use and benefit of the designated railroad companies, and continued in the State until the completion of the roads; and while the title thus continued in the State the statute of limitations did not begin to run in favor of an adverse holder of any of such lands under color of title.

2. *Adverse possession; what necessary to acquire it.*—In order to establish a title by adverse possession for ten years, the possession must be hostile, actual, visible, notorious and continuous under a claim or color of title; and where the only actual possession by a party claiming title is that a short time after the purchase of a tax title of certain lands he had timber cut therefrom, but did not exercise any other acts of ownership for seven or eight years, when he again cut timber from the lands, and that after the purchase he continued to pay the taxes, there is not shown adverse possession upon which title to the lands in question can be founded.

3. *Same; adverse possession does not run against Government.*—The statute of limitations never runs against the State unless it is expressly named, nor does adverse possession run against

[Adler v. Prestwood & Knowles.]

the General Government to defeat its title, no matter how dis-
tinct and hostile such possession may be; and one who enters
upon public lands and occupies them, claiming them as his
own, without a license of the Government by patent or other-
wise, such occupancy can never ripen into a title by right of
adverse possession.

4. *Appeals; error without injury in charges given or refused.*
When on the undisputed evidence in a case the trial court
might properly have given the general affirmative charge in
favor of the plaintiff, errors in the matter of other charges
given or refused could not have injured the defendant, and
constitute no cause for the reversal of the judgment.

5. *Detinue; right to maintain action for timber cut from land.*
The owner of land can maintain an action of detinue for the
detention of logs cut and removed from his lands; but he can
not maintain such action for said logs if at the time of the
severance the lands were held and occupied adversely to him.

APPEAL from the Circuit Court of Covington.
Tried before the Hon. J. W. FOSTER.

This was a statutory action of detinue, brought by the
appellant, Morris Adler, against the appellees, Prest-
wood & Knowles, for the recovery of certain trees which
had been severed from the land which the plaintiff al-
leged belonged to him. The facts of the case are suffi-
ciently stated in the opinion.

Upon the introduction of all the evidence, the plain-
tiff requested the court to give to the jury the general
affirmative charge in his behalf. To the court's refusal
to give this charge the plaintiff duly excepted. There
were other charges refused to the plaintiff, and also
charges which were given at the request of the defendant,
to the refusal and to the giving of each of which, respec-
tively, the plaintiff separately excepted; but under the
opinion on this appeal it is unnecessary to set them out
in detail.

There were verdict and judgment for the defendants.
The plaintiff appeals and assigns as erroor the several
rulings of the trial court to which exceptions were re-
served.

A. LATADY, for appellant.—The tax deed was utterly
void. It was made against the provision of an express

[Adler v. Prestwood & Knowles.]

statute that the lands should not be disposed of by the State of Alabama except in the manner provided by the Act of Congress for diposition of them, and to give color of title to a deed made under conditions under which the deed in question was made would be to make possible adverse possession under color of title against the title of the United States Government, and this is impossible, either with or without color of title..—*Farley v. Smith,* 39 Ala. 38; *Kennedy v. Townsley,* 16 Ala. 239; *Chastang v. Dial,* 19 Ala. 421; *Swan v. Gaston,* 87 Ala. 569; *Redfield v. Parks,* 132 U. S. 239; *Lindsey v. Miller,* 31 U. S. 666; *Bagnall v. Broderick,* 38 U. S. 436; *Gibson v. Christian,* 80 U. S. 92. The above applies both as to the deed and the attempted transfer of the title by mere endorsement; the statute of grants of Alabama requiring a formal deed with proper terms of conveyance.—Code of 1886, § 1789.

"If the land be not in the possession of the defendant but unoccupied [as in the case at bar] then evidence of title may be received on the part of the plaintiff; for in that case, the title draws to itself a constructive possession."—Smith's Leading Cases, (7th Amer. ed.) 660; *Allison v. Little,* 93 Ala. 151; *A. G. S. R. R. Co. v. Tapia,* 94 Ala. 226; *Street v. Nelson,* 80 Ala. 231; *Rasberry v. Pulliam,* 78 Ala. 191.

B. H. LEWIS and P. N. HICKMAN, *contra.*—The tax deed made by the probate judge to T. R. Cook, with the indorsement thereon by Cook, when taken in connection with the evidence of defendant Knowles and the witness Thompson, that Knowles paid Cook the purchase money, was competent evidence, and the ruling of the court, allowing its introduction to show color of title was free from error.—*Ladd v. Dubroca,* 61 Ala. 25. An invalid or defective conveyance gives color of title.—*Riggs v. Fuller,* 54 Ala. 141. The deed of a tax collector invalid and inoperative to pass title, if possession is taken and claimed under it, it color of title.—*Stovall v. Fowler,* 72 Ala. 77.

While there can be no adverse possession or claim of title set up under a tax sale, to land belonging to the

[Adler v. Prestwood & Knowles.]

U. S. Government before the patent issues, still such right can be acquired, when as in this case, by the act of Congress the grant was made to the State of Alabama as trustee.—*Molton v. Henderson*, 62 Ala. 426.

HARALSON, J.—The action is for the recovery of personal property in specie,—pine logs cut, as alleged, off of plaintiff's land, which is described in the complaint.

It was not disputed that under the Act of Congress of September 29th, 1890, and under the decree of the chancery court of Escambia county in favor of Morris Adler against the Van Kirk Land & Construction Company, and the sale and conveyance of said lands thereunder by the register of said court, to the appellant, he became invested with the legal title to the same. The certificate of the Department of the Interior to the Van Kirk Land & Construction Company, certifying the title from the Government to said Company, as successor in interest of the Mobile & Girard Railroad Company, and the decree of said chancery court against said company in favor of appellant, and the deed of the register under the orders of the court to him, were introduced without objection, for the purpose of showing that he acquired and held the legal title to said land.

There can be no dispute under the evidence, that the logs were cut from section 29, the land the plaintiff claimed belonged to him, and were hauled therefrom, on to section 28, belonging to one of the defendants, W. T. Knowles. He testified that he knew well the line between sections 28 and 29, and owned the land in section 28. He further testified that he had the logs cut by one Loam Liles, and paid him for cutting, but received credit on the books of Prestwood & Knowles for the amount paid Liles; and as they were cut, they were immediately hauled on to section 28 and dropped there, along the road extending from the logging operations (or the cutting grounds) on section 29, to Prestwood & Knowles' mill on section 28. These parties owned a saw mill on

said section, where these logs were intended to be sawed into lumber.

Loam Liles testified, among other things that he was at work for Prestwood & Knowles in their store at the mill, and Knowles got him to go and take charge of the cutting of the logs, on section 29, which logs were for the mill of Prestwood & Knowles; that Knowles made the contract with him, and he was sometimes paid by Knowles, and sometimes paid by Prestwood. There was no evidence in conflict with that referred to above.

The theory on which the defense to the suit was made by defendants was, that said land was subject to taxation for the year 1885, and taxes were assessed on it for that year, which remained unpaid, and in 1886, it was sold for taxes by the tax collector, and bid off to one Stanley, at the amount of the taxes, interest, penalty and costs, amounting to the sum of five dollars, and he received a certificate of purchase, which certificate the said Stanley duly assigned to one T. R. Cook; and after two years had elapsed from the date of sale, the judge of probate of the county, on the 27th June, 1888, duly executed and delivered to said Cook, a tax deed to said land, which deed was transferred by said Cook to said W. T. Knowles by indorsement signed by him on the back thereof, in the words, "Transferred to W. T. Knowles, Feb'y 5th, 1888." This was the only evidence of paper title the defendants offered to the land. When offered as a muniment of title, on the objection of plaintiff, it was excluded. The defendants then offered and the court admitted said deed and the indorsement thereon as color of title, to support a claim by adverse possession for a period to bar the title of the true owner. The objections to the transfer as evidence were that it was void on its face; that said transfer was not placed on record as required by the acts of 1892-93 (p. 478), and that at the date of said transfer, the legal title was in the United States Government.

The construction placed on the act of June 3d, 1856, by which lands were granted to the State, to aid in the construction of certain railroads in said State,—among them the Mobile & Girard Railroad from Girard to Mo-

bile,—is that the act of Congress operated a grant *in presenti* to the State, until the completion of the road, according to the terms of the act, and until then, the State alone could maintain an action for possession; and until then, the running of the statute of limitations of ten years did not begin in favor of an adverse holder under color of title.—*Swan & Billups v. Gaston*, 87 Ala. 569; *Ware v. Swan & Billups*, 79 Ala. 330. Color of title can never be made the basis of adverse possession against one, as against whom no adverse possession can run. The principle is well settled, that a statute of limitations never runs against the State, unless it is expressly named, nor against the General Government.—*Kennedy v. Townsley*, 16 Ala. 239, 246; *Wagnon v. Fairbanks*, 105 Ala. 527; *Wiggins v. Kirby*, 106 Ala. 262.

In the case last cited, it was held that in order to establish title, founded on ten years adverse possession, so as to bar the title of the legal owner, the possession must have been hostile, actual, visible, notorious and continuous under a claim or color of title. Mere possession of land is not *prima facie* adverse to the true owner. To have that effect, it must be shown that the adverse holding was known to the true owner, or that such adverse claim was so open and notorious as to raise the presumption of notice.—*Normant v. Eureka Co.*, 98 Ala. 181. Mere casual acts of ownership, as where one authorized persons to go upon the land to cut timber therefrom; that he paid the taxes on it, and requested another to look after the premises for him, do not constitute adverse possession.—*Wiggins v. Kirby, supra.*

The land in question was uninhabited, uncultivated woodland, with no fences or other outward evidences of the possession of any one. Knowles did testify, that he bought the land from Cook in 1888, and paid the purchase money; that Cook was then in possession of the land,—but what acts of Cook manifested his possession are not stated; that he, Knowles, took possession and has been in possession, and paid the taxes on the land ever since; that in a few months after he bought the land from Cook, in 1888, he cut nearly all the timber off of one-half the section, and got timber off of it from time

to time as he needed it. On cross-examination, however, he testified, that he would not say that he had cut any timber or logs or wood from the land, since the year 1888,—and then about five months after he bought it,—up to the cutting in the Fall of 1895. He does not show that he ever went on the land himself or by his agents in this time, or, with the exception of these two occasions when he cut timbers, that he ever exercised any acts of ownership over the land. It was further shown, that in 1895, when his cutting of the timbers became known to the plaintiff, and his agent was warned off by plaintiff's agent, he immediately desisted, exercised no further acts of possession, and so far as shown, has not been on the land since. The defendants are thus confronted with the two difficulties to the defense set up: 1st, that the title to these lands, whether in the General Government or in the State of Alabama, as trustee, was certainly never divested before the passage of said act of Congress of September 29th, 1890, and possibly not before the 21st of April, 1893,—the date of the certificate of the Secretary of the Interior to the Vankirk Land & Construction Company (a question immaterial to decide),—and no statute of limitation by adverse possession could commence to run, before these dates; and 2d, such acts of possession as the defendant Knowles sets up are lacking in that hostile, actual, visible, notorious and continuous character, such as must characterize adverse possession. For these reasons, and on the undisputed facts in the case, the court should have given the general charge for the plaintiff. It is unnecessary to notice the charges given or refused, since they could not have worked injury to the defendants, and are no cause for reversal.—*Tuscaloosa Cotton Seed Oil Co. v. Perry,* 85 Ala. 159; *Waldman v. N. B. & M. Ins. Co.,* 91 Ala. 171; *Seymour v. Farquhar,* 93 Ala. 292.

The general rule is, as we have heretofore held, "when things which in their natural state form part of the freehold, are severed therefrom, and converted into chattels, they belong to the owner of the land. Mere changes in the form of such things so long as the identity of the **original material can be traced, will not work a change**

of ownership. * * And trover or detinue may be maintained for their conversion or detention if they are removed from the freehold. * * The owner of the freehold can not, however, maintain either of these actions, if, at the time of the severance, he had not actual or constructive possession of the land, if the land was then held and occupied adversely to him.—*Cooper v. Watson*, 73 Ala. 252; *Beatty v. Brown*, 76 Ala. 268; *Lockhart v. Barton*, 78 Ala. 190; *Street v. Nelson*, 80 Ala. 230.

In the case before us, as we have seen, the defendant did not hold the land adversely to the plaintiff at the time the logs sued for were severed and removed therefrom.

Reversed and remanded.