# Pearce *v.* Aldrich Mining Company.

## *Trover and Conversion*

(Decided December 18, 1913. Rehearing denied February 5, 1914. 64 South. 321.)

1. *Property; Ownership; Freehold.*—Where things which in their natural state form part of the freehold are severed therefrom and converted into chattels, they belong to the owner of the freehold.

2. *Trover; Property Severed From Freehold.*—Mere change in the form of things so long as their identity can be traced will not work a change of ownership, and trover or detinue may be maintained for their conversion or detention if they are removed from the freehold.

3. *Same.*—The owner of the freehold cannot maintain trover or detinue for chattels severed from the freehold unless at the time of the severance he had actual or constructive possession of the land; nor is he entitled to recover if the land was held adversely to him.

4. *Same; Title to Land.*—Unless it is necessary to prove constructive possession in plaintiff, the title to the land cannot be put in issue in an action for the conversion of chattels severed from the realty.

5. *Same.*—In trover for the conversion of coal charged to have been mined from plaintiff's land where it appeared that plaintiff was not in the actual possession of the land at the time the coal was taken, plaintiff was entitled to prove his legal title in order to show constructive possession essential to maintain the action, in the absence of evidence that another was in the actual, adverse possession.

6. *Same.*—Where plaintiff sued in trover for the conversion of coal underlying land alleged to be owned by him, plaintiff's employment of a certain person as his agent to look after the land, did not deprive him of such possession as would preclude him from maintaining the action.

7. *Adverse Possession; Requisites; Jury Question.*—Under the evidence in this case, the continuity of plaintiff's adverse possession of the land should have been submitted to the jury.

8. *Same; Acts; Constituting.*—If plaintiff had title, the act of defendant in mining coal underlying land claimed by plaintiff did not give defendant such actual, adverse possession as would defeat plaintiff's constructive possession under his legal title.

(Mayfield, J., dissents.)

APPEAL from Marion Circuit Court.

Heard before Hon. C. P. ALMON.

[Pearce v. Aldrich Mining Company.]

Action by James P. Pearce against the Aldrich Mining Company in trover. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

See, also, 169 Ala. 161, 52 South. 911, Ann. Cas. 1912B, 288.

The complaint claimed for the conversion of 3,000,-000 tons of coal mined on, removed from, and converted by defendant between the 1st day of January, 1900, and the 1st day of April, 1905, from a quarter section of land set out in the complaint, the property of plaintiff. The case was submitted by agreement on the same fact as appears from the bill of exceptions on the former trial, and with the request from each of the parties thereto for the affirmative charge, and that the bill of exceptions taken from the giving of said charge, should be the same as appears in the original bill of exceptions formerly submitted to the Supreme Court in this case.

SAMUEL D. WEAKLEY, and W. C. DAVIS, for appellant. See former appeal in this case *Aldrich Mining Co. v. Pearce,* 169 Ala. 161. The fact, if it be a fact that defendant was an inadvertent trespasser, would not affect Pearce's right of recovery, but would be important only on the question of damages.—*White v. Yawkey,* 108 Ala. 270. The true rule is that the law will not permit the title to land to be inquired into directly, in personal actions.—*Fielder v. Childs,* 73 Ala. 567. The fact of adverse possession and holding by defendant at the time of the acts of severance from the freehold, is the test, and it is only in such cases that an inquiry into the title would be direct and admissible.—*Lyons v. Stickney,* 170 Ala. 134. This is true in all cases, in trespass, trover, detinue, replevin, or for statutory penalty.—*Brooks v. Rogers,* 101 Ala. 111; *White v. Farris,* 124 Ala. 461. Although a defendant is in adverse pos-

sion of land at the time of the severance, the plaintiff when shown to be the real owner may, after re-entry and renunciation by defendant of such adverse holding recover for such severed portions of the realty in trover. —*Lyons v. Stickney, supra.* When parts of the free- hold are severed therefrom and converted into chattels, they belong to the owner of the land; and trover or de- tinue may be maintained for their conversion or deten- tion if they are removed from the freehold. Construc- tive possession of the land derived from proof of title will support either of said actions, if at the time of the conversion or detention the land was not held and oc- cupied adversely to the holder of the title.—*Adler v. Prestwood,* 122 Ala. 367; *Powers v. Hatter,* 152 Ala. 636; *White v. Yawkey,* 108 Ala. 270; *Brooks v. Rodgers,* 101 Ala. 111; *Leatherwood v. Sutherland,* 81 Ala. 458; *Street v. Nelson,* 80 Ala. 230; *Cooper v. Watson,* 73 Ala. 252. Other authorities to the same effect, are.—*Wash- burn v. Cutter,* 17 Minn. 361; *Lehigh Zinc & Iron Co. v. N. J. Zinc & Iron Co.,* 55 N. J. L. 350; *Wright v. Guyer,* 9 Watts. (Pa.) 172; *Harlan v. Harlan,* 15 Pa. St. 507; *Halleck v. Mixer,* 16 Cal. 574; Cobbey on Reple- vin, secs. 374, 375, 376, 378, 383; 28 A. & E. Enc. of Law, p. 670, and 671, parag. 18; 24 A. & E. Enc. of Law, pp. 486, 487, 488, parag. 8; 38 Cyc. pp. 2049, 2050. Right to the immediate possession of chattels severed from land rests in the owner. "Because the title is in him, and the right of possession of personalty is refer- red to the title. This, with conversion by the defend- ant is all that is necessary to the maintenance of trover —the title and right to immediate possession in plain- tiff to the personalty converted." In this class of cases, the fact vel non of a holding by a defendant adverse to the plaintiff is of controlling importance.—*Brooks v. Rodgers,* 101 Ala. 111. Action for money had and re-

ceived, or for use and occupation cannot be maintained by a plaintiff against a defendant where there was an adverse holding by the defendant. If the possession is not adverse, the action of assumpsit will lie.—*Price v. Pickett,* 21 Ala. 741; *Weaver v. Jones,* 24 Ala. 423; *Fielder v. Childs,* 73 Ala. 567; *Stringfellow v. Curry,* 76 Ala. 394; *Lockhart v. Barton,* 78 Ala. 189. Merely claiming at the trial that the defendant held adversely when the coal was mined, will not defeat the action; such alleged defense must be established by proof. Hence, when the evidence conflicts on this question, a case is presented for the jury.—*Powers v. Hatter,* 152 Ala. 636; *White v. Farris,* 124 Ala. 461.

JOHN C. FORNEY, for appellant. The main question in this case is, does Pearce own the land? If he claims the land only, but has not taken legal steps to perfect his claim, he cannot maintain replevin for coal taken therefrom.—*Harlan v. Harlan,* 15 Pa. 509; Cobby on Replevin, sec. 388. A person must have the legal title to maintain trover in a case like this. Pearce did not have an automatic legal title, and a break of seventeen months in the possession is too wide.—*Beasley v. Howell,* 117 Ala. 499. The corner is lost and has not been found.—*Taylor v. Formsby,* 116 Ala. 621. The affirmative charge is properly given for defendant because by the testimony of plaintiff he was not in possession of same when defendant took the coal.—*Garrett v. Sewell,* 95 Ala. 456. Under the evidence the possession was in Nelson, the tenant. The court properly gave the affirmative charge because under the evidence defendant was in the adverse possession of the land when the coal was taken.—*Cooper v. Watson,* 73 Ala. 254; *Stewart v. Tucker,* 106 Ala. 321; *Hughes v. Anderson,* 76 Ala. 209; *Hoyle v. Mann,* 144 Ala. 523.

ANDERSON, J.—The general rule is that when things, which in their natural state, form part of the freehold, are severed therefrom, and converted into chattels, they belong to the owner of the land. Mere changes in the form of things, so long as the identity of the material can be traced, will not work a change of ownership. And trover or detinue may be maintained for their conversion or detention, if they are removed from the freehold. The owner of the freehold cannot, however, maintain either of these actions if, at the time of the severance, he had not actual or constructive possession of the land—if the land was then held and occupied adversely to him.—*Cooper v. Watson,* 73 Ala. 252; *Adler v. Prestwood,* 122 Ala. 367, 24 South. 999; *Brooks v. Rogers,* 101 Ala. 111, 13 South. 386.

It is also well settled that, unless it is necessary to prove a constructive possession of land the title thereto cannot be put in issue in these transitory actions. Or, as was said by this court, speaking through Brickell, C. J., in the case of *Fielder v. Childs,* 73 Ala. 567, and again in the case of *Cooper v. Watson, supra,* "the law will not permit the title to land to be inquired into directly."

We find no case, however, in this state, holding that the title to land cannot be proved for the purpose of showing constructive possession other than the opinion upon the former appeal in this case (169 Ala. 161, 52 South. 911, Ann. Cas. 1912B, 288), and which follows a dictum in the *Watson Case, supra;* but we do find several cases holding that it can be done.—*White v. Yawkey,* 108 Ala. 270, 19 South. 360, 32 L. R. A. 199, 54 Am. St. Rep. 159, wherein the case of *Cooper v. Watson* was cited in support of the holding that to maintain trover for the conversion of timber severed from land, legal title in the plaintiff, which draws to it construc-

tive possession, is, in the absence of adverse possession
of another, sufficient. See, also, *Adler v. Prestwood,
supra; Lyons v. Stickney,* 170 Ala. 134, 54 South. 496;
*Powers v. Hatter,* 152 Ala. 636, 44 South. 859. In-
deed, all of the authorities hold that such an action can
be maintained by a plaintiff either in the actual or
*constructive* possession, but cannot be maintained
against one in possession and holding adversely to the
plaintiff. Of course, if another is, at the time of the
severance, in the adverse possession of the land, the
plaintiff cannot maintain the action, as he cannot have
either the actual or constructive possession, for there
can be no actual possession to the same land by two dis-
tinct claimants, nor can there be a constructive posses-
sion in the plaintiff when another is in the actual, ad-
verse possession. If on the other hand, the plaintiff is
in the actual possession of the land, he can recover, or
if no one was in the actual possession at the time of
the severance, the law draws the constructive possession
to the legal title and the way to establish said construc-
tive possession is by showing title. It would be quite
an anomaly to hold that a plaintiff who had construc-
tive possession could recover, and then cut him off from
showing said constructive possession upon the idea that
it would convert such an action into a trial of the tide
exclusively. The policy of the law is to permit a plain-
tiff in possession to litigate with a tort-feasor for the
things severed, and to recover upon his possession,
either actual or constructive, but if the defendant was
in the adverse possession at the time of the severance,
the law will not permit a recovery by allowing the plain-
tiff to establish directly his title to the land. This rule,
however, does not preclude a plaintiff from recovering
upon his constructive possession as against one not in

the actual adverse possession, or from showing title to the land as an incident to his constructive possession.

The former opinion in this case (169 Ala. 161, 52 Ala. 911, Ann. Cas. 1912B, 288), in so far as it holds that a plaintiff cannot show title to the land for the purpose of showing constructive possession, notwithstanding there may be no actual adverse possession by the defendant, is unsound and must be overruled. The opinion seems to be grounded largely upon an expression in the latter part of the opinion in the case of *Cooper v. Watson, supra,* and which was not decisive of that case, as the proof there showed that the defendant was in the adverse possession at the time of the severance, and, that being the case, there was no room for constructive possession. Moreover, the opinion states that a plaintiff can recover if in the actual or constructive possession at the time of the severance, and it is contradictory and inconsistent to hold that he cannot show title to the land which draws with it constructive possession, and which is the only practicable way to establish said constructive possession to the land.

The case of *Powers v. Hatter,* 152 Ala. 636, 44 South. 859, supports in the conclusion the present holding, but the rule there stated as to the action of trover is incorrect. The writer evidently applied the general rule as to trover, and overlooked the fact that the suit involved chattels severed from the freehold, and so much of the opinion, as states that the plaintiff did not have to show possession, actual or constructive, as to the trover count, or that recovery could only be defeated by showing a divesture of title, is overruled.

As we view this case, the first inquiry to be submitted to the jury was the location of the line. If the coal was not taken from the 40 acres claimed by the plaintiff in section 10, then the plaintiff could not recover,

[Pearce v. Aldrich Mining Company.]

but this was a question for the jury, as there was a conflict in the evidence as to the location of the proper line between the two tracts. If the coal was taken from the 40 claimed by the plaintiff, the next inquiry was, Who was in the possession at the time the coal was mined? The plaintiff did not show actual possession at the time the coal was mined, as the acts of the Nelsons did not rise to the dignity of such actual possession as would carry with it notice. He did show evidence, however, from which the jury could conclude that he had acquired title to the land by adverse possession, and which drew to it the constructive possession, unless the land was in the adverse possession of the defendant when the coal was mined. The plaintiff showed possession of the 40 from 1877 to 1891, under color of title, and if it was open, hostile, notorious, and continuous, it ripened into title. It may be true that if there is a break in the continuity of the possession, it is fatal, and the jury could find such a break from the direct testimony of the witness Spiller as to when he suceeded to the possession of Elliott, but upon cross-examination, he stated that he "moved there right after Mr. Elliott gathered his wheat crop." This, therefore, made it a question for the jury as to whether or not the possession of those holding under and for the plaintiff had been continuous.

The defendant offered evidence tending to show that it was in the adverse possession of the strip when the coal was mined, and if it was, the plaintiff could not recover, for if the defendant had, at the time, the actual adverse possession of the strip, there was no room for constructive possession even if the plaintiff had previously acquired title, but this, too, was a question for the jury, as the mere act of the defendant in mining the coal did not give him such an actual adverse possession as would defeat the plaintiff's constructive pos-

session under his title, if the jury found that he had title; and, while there was some evidence tending to establish adverse possession of the defendant to the surface, it was disputed and was a question for the jury.

Nor are we impressed with the soundness of the suggestion that the arrangement that the plaintiff had with the Nelsons was such as would deprive him of the right to the immediate use or possession of the land so as to bring him within the influence of *Garrett v. Sewell,* 95 Ala. 456, 10 South. 226. The evidence shows that the Nelsons were not tenants of the land for any fixed period, or at all, but were merely plaintiff's agents to look after it for him.

The trial court, in giving the general charge for the defendant, followed the former opinion in this case, but, as said opinion is overruled, the general charge was improperly given, and the judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and MCCLELLAN, SAYRE, SOMERVILLE, and DE GRAFFENRIED, JJ., concur.

MAYFIELD, J.—I dissent for the following reasons:

It is decided in this case that a disputed boundary line between two coterminous landowners may be determined and established in an action of trover. I do not think that this is now, ever was, or ever ought to be, the law of this or of any other state. It is decided in this case that the title to land may be determined in an action of trover. I do not think that this is now, or ever was, the law in England or in America.

It is decided in this case that a defendant who mines coal from lands which he purchased, and of which he was put in possession, is liable in trover for all the coal

mined therefrom, if a jury, on the trial of such action of trover, should believe that another had the legal title to the land in question. I do not believe that this is, or ever was, the law in this state. I do not mean to say that these provisions of law above complained of are written in the opinion; in fact some of them are expressly denied, and converse principles are asserted; but it is the decision of which I am now speaking. There are parts of the opinion which are erroneous, and of these I shall hereafter speak; but I am speaking of what is decided, which is even contrary to the opinion in this case, as well as to the opinion on the former appeal.

It is said in this opinion—what has been frequently heretofore said by this court—"The law will not permit title to land to be inquired into directly," in personal transitory actions, such as actions of trover, yet the court straightway deflects and decides that the title can be directly inquired into in an action of trover.

I assert, without any doubt as to the correctness of the statement, that the record in this case shows conclusively and undisputedly that the questions directly sought to be determined in this case, and the only ones in dispute between the parties are: First, the true boundary line between sections 10 and 11; and, second, whether the plaintiff or the defendant has the legal title to section 11. These questions were not merely incidental to the trial; they were directly inquired into, just as fully and just as directly as could be done in an action of ejectment, trespass, or quare clausum fregit, or in equity by a bill to ascertain and establish a disputed boundary line.

I submit that no one, judge, lawyer, or layman, can read this record without saying that the only question disputed and sought to be determined was, Which of

the litigants had title to the locus in quo, the land from which the coal was mined? This is shown to have depended solely upon the disputed question of the location of the true boundary line between sections 10 and 11; or, concretely expressed, which of the two surveys, the "Red Oak" survey or the "Clark" survey, was correct, and marked out the true boundary line. If the jury found the Red Oak survey to be the true line, then plaintiff concedes he ought not to recover, for he concedes that he claimed no land east of the Red Oak corner. There could not be a finding for the plaintiff without finding that the Clark survey was the true boundary line. Plaintiff's whole claim and theory is based upon this finding; without this, his counsel concede he cannot recover in this action.

This question as to this disputed boundary line did not arise *incidentally,* as counsel for appellant contend, and as the court on this appeal treats the question. It was sought to be raised directly, and sought to be decided. More than one-half of the evidence in the record of 50 pages is taken up with proof of surveyors and others attempting to ascertain which of the two lines was correct, or that the Red Oak survey (the oldest survey, and as to which there was some evidence to show that it was the original government survey) was not the true boundary line, but that the Clark line, 262 feet east thereof, was the true line. This was the main fact sought to be ascertained, and the case could not be decided for plaintiff without proving to the satisfaction of the jury that Red Oak corner was not the true corner. This must be conceded because it is not disputed. If this was not directly inquiring into the title to this strip of land 262 feet wide, from which the coal in question was taken, then that title could not be inquired into in an action of ejectment, or of trespass, or of quare clau-

sum fregit. No case of disputed boundaries and title to land was ever more clearly and directly inquired into on a trial than was done or attempted in this case. This uncertain and disputed boundary line alone was sufficient to defeat an action of trover by either party against the other; if the right to recover, as this record shows, depended entirely upon a judicial ascertainment of it, this could not be done in any personal or transitory action like trover.

This, however, is not the only insurmountable and impassable obstacle in the way of this action of trover. Suppose the boundary line had been ascertained and fixed by a bill in equity, and fixed where plaintiff claims it is, viz., as shown by the Evans or Clark survey, could the plaintiff then maintain this action? Certainly not; under the undisputed evidence and the conceded and admitted facts in this case the action could not then be maintained.

If the boundary line is settled, it will require an action of ejectment to determine the title to section 11, as between the plaintiff and the defendant. Both claim title to it through a common source, one Butler. It is conceded that the defendant has the legal title to section 11, by a valid deed from Butler and wife, unless the plaintiff had acquired the legal title thereto by 10 years' adverse possession prior to June, 1905, which was prior to the beginning of this action. While this deed to defendant, from Butler, was executed after the alleged conversion, yet if the legal title to the land was then in Butler, it passed to this defendant, and the plaintiff then certainly had no right of action. The defendant is certainly in privy of title with Butler, and can set up any defense which Butler could interpose if sued in this action. Suppose Butler had been sued instead of this grantee. Then, before the plaintiff could recover,

he would have to establish his title, and the only possible title he claims is that acquired by 10 years' adverse possession. It cannot be maintained that the plaintiff was in the actual possession of any foot of the 160 acres when the alleged conversions occurred. His utmost claim is constructive possession, and that he could not possibly show, except by proving continuous, open, notorious, and hostile possession against the true owner, Butler, for 10 years, before his possession ceased. This, of course, he could not do in an action of trover against the true owner, and, if not against the original owner, he cannot, against such owner's vendee. In other words, if the coal in question was taken from section 10, as plaintiff claims, then the title to the coal and the right of action was in the common source of title, Butler, unless that title had been divested out of him and invested in plaintiff by 10 years' adverse possession. Both Butler and plaintiff were claiming title to section 10, when the coal was converted. If Pearce, the plaintiff in this suit, can recover in trover for that coal, surely Butler could recover, who is conceded to have had the legal title and right to the possession, unless his title and right had been divested by Pearce's claim of 10 years'. adverse possession. If Butler had sued the defendant instead of Pearce, and it was conceded that the land was in section 10, the defendant could not have defended by setting up Pearce's adverse possession. So it was absolutely necessary for the defendant to protect itself from a second, similar suit, by Butler, to purchase the land from Butler. It, therefore, appears beyond question and dispute that if this plaintiff can maintain this action against this defendant, then Butler could have maintained a similar suit much more easily, because his title to section 10 is not disputed but admitted.

To say that the title to the section 10, or to 160 acres thereof, was not "inquired into directly" on this trial is, in my judgment, to dispute the whole record.  It could not possibly have been more directly inquired into or put in issue if the action had been ejectment, trespass to try title, or trespass quare clausum fregit.  Both parties attempted, as directly as it is ever possible in any action of ejectment, to prove title thereto.  They both claimed title through the common source, one Butler, so there was no need to go farther back as to the source of title.  Both parties claimed to have deeds from Butler and wife, conveying the same 160 acres of section 10.  Plaintiff's was prior in time.  Its execution was assailed, and this question was gone into fully.  A certificate of the Secretary of State was introduced to show that the person who purported to take the acknowledgment was not a justice of the peace, as his certificate recited.  The deed was in effect claimed by the grantors, Butler and wife, to be a forgery, full proof was taken as to the attestation of it, and it was shown that the land, at the date borne by the deed, was the homestead of Butler, and that the deed did not even purport to be acknowledged so as to pass title.  The deed was therefore void as a conveyance, and good at best only as a color of title.  The proof was then gone into fully to show that Pearce, the grantee, went into possession under this color of title, and had held the possession continuously and adversely for 10 consecutive years.  The defendant attempted to show breaks in the continuity of this possession.  The defendant then introduced evidence to prove, or it was proved without dispute that Butler and his wife conveyed the lands to defendant, and that this was the only deed that they had ever made to the land; but that they had made a prior mortgage—one prior even to the date of Pearce's

deed; that they had never heard of Pearce's claiming the land until a short while before they conveyed to defendant. So, if the title to this 160 acres of land claimed by plaintiff was not *"directly"* put in issue and attempted to be determined in this action, it never can be *"directly inquired into"* in any action of any kind. To say that the action was not "directly" inquired into is to dispute the whole record and the whole theory of the trial.

Having given my view of the record, the law and the decision on this appeal, I will now notice the opinion.

It is said in the opinion of Brother ANDERSON that: "The former opinion in this case (169 Ala. 161, 52 South. 911, Ann. Cas. 1912B, 288), in so far as it holds that a plaintiff cannot show title to the land for the purpose of showing constructive possession, notwithstanding there may be no actual adverse possession by the defendant, is unsound and must be overruled." If such was the decision on the former appeal it should be overruled, and if anything like this is in the opinion on the former appeal, I agree that it ought to be corrected. As I wrote the opinion on the former appeal, I desire to now say it was unintentional, and I beg pardon for writing so loosely; but I must say I have re-read the original opinion, and the copy in the official report, and I do not think that the case so decides, or that I so wrote. I must say that I never thought the law was that the plaintiff could not show title to land for the purpose of showing constructive possession, when there was no adverse holding by the defendant; but, on the other hand, I thought he could, and thought I so wrote in the opinion on the former appeal, and I yet think so.

The opinion on this appeal is clearly inconsistent with itself. After stating the law correctly, that in trover the title to the land could not be inquired into

directly, but could be indirectly, it goes on to decide, in applying the law to the case made by the record, that in this case the title could be directly inquired into, and must be determined by the jury before any right of recovery could be shown. This necessarily follows from what is said in the opinion, if applied to the case made by this record, or to any other similar case.

In Brother ANDERSON'S opinion, in summing up the conclusion, it is said: "As we view the case, the first inquiry to be submitted to the jury was the location of the line. If the coal was not taken from the 40 acres claimed by the plaintiff in section 10, then the plaintiff could not recover, but this was a question for the jury, as there was a conflict in the evidence as to the location of the proper line between the two tracts. If the coal was taken from the 40 acres claimed by the plaintiff, then the next inquiry was, who was in the possession at the time the coal was mined? The plaintiff did not show actual possession at the time the coal was mined, as the acts of the Nelsons did not rise to the dignity of such actual possession as would carry with it notice. He did show evidence, however, from which the jury could conclude that he had acquired title to the land by adverse possession, and which drew to it the constructive possession, unless the land was in adverse possession of the defendant when the coal was mined." The above quotation is a correct statement of the issues and inquiries presented on the trial and shown by this record; and the same was so stated in the opinion on the former appeal, and was stated as being an attempt to directly inquire into and to determine title to land, and that it ought not to be allowed, and would not be allowed, in an action of trover; whereas, it is decided on this appeal that the action will lie when the issues and inquiries are as above stated by Justice ANDERSON.

Herein lies the only conflict between the decisions on the two appeals.

If the jury were called together on this trial, as Brother ANDERSON says, to inquire into and determine which of two lines was the true boundary line between sections 10 and 11, and then to inquire into and determine whether the plaintiff had been in the actual, open, notorious, and continuous possession of 160 acres of land in section 10, so as to make the possession adverse, and so it could have ripened into title before the coal was taken therefrom, and that the jury must determine both of these questions before plaintiff could have any right to recover, and all this is not a direct inquiry into the title to land, then I cannot conceive what would be a direct inquiry.

It is conceded by counsel for appellant, and by Brother ANDERSON in his opinion, that if the jury find that the Red Oak survey is the true boundary line, then plaintiff fails, and that if they find that plaintiff's possession of the 160 acres in section 10 was not adverse for 10 consecutive years before the coal was mined, then plaintiff fails, and that even if the jury find that there was a break in the continuity of plaintiff's possession, then he cannot recover; that the jury must find all of these questions in his favor, in order to find that he had title to the land, and therefore a right of recovery. If this was not a "direct inquiry" into the title of land, I ask candidly what would or could be a "direct inquiry." Could or would the inquiry have been more direct, or fuller, if the action had been ejectment instead of trover?

The whole trouble is that the court, on this appeal, have entirely misconceived the case made by the record, and misconceived the effect of the decision on the former appeal. The court, or four members of the court,

carefully and fully examined the whole record twice, on separate occasions, on the former appeal, whereas, only two of us—Brother ANDERSON and myself—have so far examined it on this appeal. Justice ANDERSON was not one of the Justices who participated in the decision on the former appeal; but I must say that I think he has properly interpreted the record, though he has improperly interpreted the opinion and the decision on the former appeal. He has clearly overlooked the fact, which he states in his own opinion, that the inquiry into title in this case was *"direct"* and not indirect. The record on this appeal shows that there was really no trial after the case was reversed, but that, by agreement, the case was submitted on the evidence as shown by the bill of exceptions on the former appeal, and that the court gave the affirmative charge for the defendant as directed by this court on the former appeal, and that the plaintiff appealed for the purpose of having the court overrule the decision on the former appeal, which he has succeeded in doing.

I must say, however, that the court, on the former appeal, did not decide what, in the opinion by Justice ANDERSON, the court now says it decided, and that, as the former decision was overruled to that extent only, it *was not overruled at all.*

There is no doubt, however, that the decisions on the two appeals are directly in conflict, albeit the conflict is not upon the question or point stated in the last opinion. This I have before shown, by quoting from the two opinions. The point of difference, and the only difference, is that on the former appeal the trial was held to be an attempt, in an action of trover, to *"directly"* inquire into the title of land, and to determine title in such action, and that it could not be done, and that as the record indisputedly showed that plaintiff could not

recover without first having the disputed boundary line judicially determined, and this he could not have so determined in an action of trover, he could not recover in this action. For these two reasons it was held on the former appeal that plaintiff could not recover. The opinion and decision on this appeal practically holds and decides the same questions of law that were decided on the former appeal, yet it reverses the former decision and reaches a directly opposite result. In my judgment the decision and result on this last appeal is wrong, and wrong because the law announced was not properly applied to the case made by the record on either appeal. It is so said in the opinion on this appeal, and is so decided and even quoted from former opinions and decisions of this court in the selfsame cases. For example, in the case of *Cooper v. Watson,* 73 Ala. 252, where the inquiry into title was nothing like as direct or extensive as it was in this case, the court held that the inquiry was improper. If Cooper's possession in that case was adverse, surely the defendant's was in this case. Moreover, in the case at bar, the plaintiff's grantor, Butler, was claiming title and constructive possession, and it is conceded that he did have such title and possession as to section 10; in fact both parties claim through a common source, and the jury were required to decide which of the two had acquired the legal title to the land in section 10 from this common source. It is also conceded that the defendant acquired the legal title, unless the plaintiff could prove open, notorious, hostile, and continuous possession, under color of title, for 10 years before the coal was taken from the mine; the plaintiff not being in the actual possession at that time.

It was claimed by Butler, the common source of title, that he had never sold or conveyed to plaintiff; that the

alleged deed introduced in evidence by the plaintiff was a fraud and a forgery, and that neither he nor his wife ever signed, acknowledged or delivered that or any other deed to the plaintiff, or to any one for him. The Butlers denied that they, or either of them, even appeared before the person who purported to take the acknowledgment. It was even denied that such person was a justice of the peace as he certified in his certificate; and it was shown that the records in the office of the Secretary of State did not show where a commission had issued to, or a bond had been executed by such justice of the peace. It was also shown that the land in question, at the date of the alleged execution of this deed, was the homestead of Butler; and the alleged deed did not purport to be so acknowledged by the wife as to pass title. The trial court charged the jury that the alleged deed was void as a conveyance and, at best, could answer only as color of title, and in his oral charge also instructed the jury that plaintiff could not recover if the alleged deed, or color of title, was not obtained in good faith, and that as established it was good only as color of title. The court also charged the jury that the fact that the Secretary of State had certified that there was in his office no record of Jackson Whaley's being a justice of the peace was not conclusive evidence that there was not such a justice of the peace, but was only prima facie evidence thereof. The great bulk of the evidence in the case tended to show the continuity of plaintiff's possession.

If title to land was not *directly* inquired into on this trial, it never was, and never can be, on any trial or in any case. If the complaint is not looked to, in this case, or if it should be lost from the record, no judge or lawyer would ever once suspect that the action was trover, or anything but ejectment. The evidence as to the val-

ue of the coal—of which there is very little, the amount of the coal, or its value, really being not contested—is the only evidence which would in the slightest suggest that the action was trover. To say that title to land was not *directly* inquired into and attempted to be decided on the trial of this case is to dispute the entire record.

What was said in *Cooper v. Watson, supra,* and in *Mather v. Trinity Church,* 3 Serg. & R. (Pa.) 509, 8 Am. Dec. 663, which has been often cited and even quoted in the opinion and decisions of this court, is apt to and conclusive in this case. In the first-mentioned case (73 Ala. 255) it is said: "It was upon the strength of his title the right to recover the timber was based, and all questions which could have been raised, and all evidence which could have been introduced, if the action had been ejectment, were raised and introduced. The title to lands the law will not permit to be inquired into directly in personal actions. There are appropriate remedies appointed for contests of the title which parties must pursue. The lands being in the adverse possession of the defendant at the time of the severance of the timber, the first step the plaintiff must have taken to establish a right of recovery was to show title in his intestate. If he had not title, there could be no recovery. Independent of this consideration, it was said by Gibson, C. J., in *Powell v. Smith,* 2 Watts [Pa.] 126: 'It would provoke much useless litigation, and be attended with great practical mischief, if an owner out of possession were suffered to harass the actual occupant with an action for every blade of grass cut, or bushel of grain grown by him, instead of being compelled to resort to the action for mesne profits, after a recovery in ejectment, by which compensation for the whole injury may be had at one operation.' The doc-

trine seems well settled, upon principle and authority, that if the owner of the land be not in the actual possession—if he can show title to things severed from it only by showing title to the land, a personal action for the taking, conversion, or detention of such things will not lie. If he have the possession at the time of the severance, the rule is different. But if his possession is divested—if his right lies in entry, and the adverse possessor gathers a crop in the course of husbandry, or severs a tree or other thing from the land, the things severed are converted into chattels."

In the case of *Mather v. Trinity Church, supra,* 3 Serg. & R. (Pa.) 516, 8 Am. Dec. 666, 667, it was said, by Tilgham, C. J.: "There is a dictum in many books that possession is not necessary for the support of an action of trover. I think it will be found that this broad assertion is not true, if taken in its full extent and without qualification. On the contrary we find it laid down in 5 Bac. tit. Trover, C, that no person can maintain trover unless he has had a possession of, as well as property in, the chattel for the conversion of which the action is brought. And this principle, when explained, appears to be the law. The explanation is that he who has the general property in a personal chattel need not prove the possession, for the law draws the possession to the property. But he who claims only a special property must prove that he once had actual possession, without which no special property is complete. That the law draws the possession to the property of personal chattels unconnected with the land may be true, and yet it does not follow that the possession is drawn in like manner to the property of that kind of chattel, which was part of the soil, until severed from it, when the soil itself, at the moment of severance was held adversely by another. I should rather suppose

that in such case he who had actual possession of the land had possession also of the stones dug from it, and against him another person, who had the right to the possession of the land, could not support trover. He certainly could not support trespass. But he would not be without remedy; for he might first recover possession by ejectment, and then recover the mesne profits in an action of trespass. Upon the whole, * * * I find no authority * * * supporting an action of trover by him who has the right of possession against him who has the actual and adverse possession and sets up title to the land; and * * * it appears to me that many inconveniences might flow from such an action." Duncan, J., in a concurring opinion in the same case, had to say: "Trover can never be the mode in which the title to freehold can be determined. They are actions of different natures, diverso intuito, not differing in form only, but in substance, one local, the other transitory. A verdict in one cannot be received in evidence in another, between the same parties, as in Lord Cullfen's case, already stated. The title to land, can never be directly inquired into in a personal action; indirectly, in a case over which the court have jurisdiction, it may. The principal drawing after it all the incidents, it is indifferent where the land lies, be it in Turkey or China; the right to it coming incidentally before the court in the trial of a personal action, of which its examination is necessary, and therefore may be inquired into. * * * In this the plaintiffs must have made out the title; in order to a recovery, it must be the very first step; without proving the title to the land, they could not recover for the taking and conversion of its separate clods, and the stones or gravel dug out of its bowels. Liberum tenementum could be no plea in trover, as it is in trespass. That it will not

lie against one in possession, and who has been in possession for a period short of 21 years, for the exercise of any act of ownership, the conversion of the natural or artificial produce of the soil or of the earth itself, or of its contents, appears to me a clear and settled principle.  If it did, trover would lie during the pendency of an ejectment to try title, and the mesne profits be recovered before the trial of the title in ejectment. The ejectment for the land might be tried in one court, and trover for the product of the soil in another.  There might be a recovery in trover for the production of the soil, and the right to soil itself, on the trial of the ejectment, be found in the defendant."—3 Serg. & R. (Pa.) 515, 516, 8 Am. Dec. 669, 670.  In a note to the report of the above case, Mr. Freeman, the great annotator, says: " 'In *Mather v. Trinity Church'* says Rogers, J., delivering the opinion of the court in *Harlan v. Harlan,* 15 Pa. 507, 513 (53 Am. Dec. 612), 'it is ruled that trover for stone and gravel from land does not lie by one who has the right of possession against the person who has the actual adverse possession of the land and sets up title to it.  It will be remarked that it is not the actual possession, but it is the actual adverse possession of a person who claims title to it, that is the criterion. The case is put on this ground by Chief Justice Tilghman and Justice Duncan, both of whom delivered elaborate opinions, a criterion from which none will dissent, when it is considered what inconveniences would arise from a contrary decision.'  This principle is also recognized in *Heaton v. Findlay,* 12 Pa. 304; *Stafford v. Ames,* 9 Pa. 344; *Lewis v. Robinson,* 10 Watts [Pa.] 338, 342, an action of assumpsit involving the title of land, where it is laid down, 'It is therefore most palpably impossible to sustain the plaintiff's claim in this action without subverting the rule laid down and rec-

ognized in the cases of *Mather v. Trinity Church,* 3 Serg. & R. [Pa.] 509 [8 Am. Dec. 663] ; *Baker v. Howell,* 6 Serg. & R. [Pa.] *Brown v. Caldwell,* 10 Serg & R. [Pa.] 114 [13 Am. Dec. 660] ; *Irvine v. Hanlin,* 10 Serg. & R. [Pa.] 220 ; *Snyder v. Vaux,* 2 Rawle [Pa.] 423 [21 Am. Dec. 466] ; and *Powell v. Smith,* 2 Watts [Pa.] 126. The rule of these cases shows clearly that the action of assumpsit is not the proper form of action in which conflicting titles to land or the right of the inheritance can be tried.' "—3 Serg. & R. (Pa.) 509, 8 Am. Dec. 672.

I have never thought nor contended that the title to land cannot be incidentally inquired into, in an action of trover, as to a part of the freehold which has been wrongfully severed. All the authorities, including the opinion written by me on the former appeal, so say, and so decide; but all the authorities, even the opinion of Brother ANDERSON on the last appeal, hold that title cannot be directly inquired into on such a trial. If no one is in the actual possession of the freehold when the severance is had, the only possible way to prove possession is to prove title in the plaintiff; but this cannot be done when there is a bona fide dispute between the parties as to which of the two has acquired title by adverse possession for the statutory period. This is a direct inquiry into the question of title, and one that requires decision.

The leading case in the United States on this subject is that of *Mather v. Trinity Church,* quoted from at such length above. It has been cited oftener than any other case upon this particular question. In that case both the parties claimed title by adverse possession or prescription.

In the case at bar the court charged the jury in effect that they must directly inquire into the title to the land. It charged the jury that the plaintiff could not recover

if his color of title was not obtained in good faith, or if he had not proven to their satisfaction that he had held possession adversely for 10 years prior to the severance. The good faith, the openness, the notoriety, the continuity, as well as the period, of the possession was put in issue as directly as it could be, and had of necessity to be decided. As to this, I submit there can be no doubt on that part of any one who will examine this record.

The wisdom of the law and the procedure for which I contend in this case could never be better illustrated than is done by the object lesson afforded in this case. Here, it appears that the whole of the land claimed by plaintiff has been twice sold by the undisputed owner, Butler, once to the plaintiff, when it was improved, for $150 and once to the defendant, when it was unimproved, for $100; yet the defendant in this suit is sought to be mulcted in $6,000 damages, for coal taken from probably less than 1 acre of the 160 acres. And if Pearce can recover, unquestionably Butler could have recovered the same amount, from Pearce or Aldrich, if Pearce had mined the coal, as did the Aldrich Company, or if both together had mined it.

I submit that it was never supposed, on the original trial or on the former appeal, that the title to the land was not attempted to be *directly* inquired into, and to be determined, not, of course, as res judicata, but for the purpose of determining whether or not the plaintiff could recover. I still insist that no one can read the record on the former appeal and for a moment doubt that the inquiry into the title was direct, and not merely incidental or indirect.

The various rulings of the trial court, together with the charges given and refused, are not set out on this appeal; only so much of the record is set out on this

appeal as was deemed necessary to justify the giving or the refusal of the affirmative charge; but the record on this appeal, I still contend, shows the inquiry into the title to have been direct, and not merely incidental or indirect, though it is not so conclusive on this point as it was before.