(77 South. 4)

PEARCE v. BRILLIANT COAL CO. et al.
(6 Div. 612.)

(Supreme Court of Alabama. Nov. 15, 1917.)

1. APPEAL AND ERROR ⊂⊃184—REVIEW—DEFENSES NOT RAISED BELOW.

Whether the bill shows a complete and adequate remedy at law is not before the Supreme Court, where it affirmatively appears that this question was not passed upon or decided by the court below.

2. CORPORATIONS ⊂⊃591 — CONSOLIDATION — ACTIONS AFTER CONSOLIDATION.

Code 1907, § 3506 (Acts 1903, p. 310), provides relative to the consolidation of corporations that the rights of creditors of any of the former corporations shall be preserved unimpaired, and the former corporations may be deemed to continue in existence in order to preserve the same, and that all debts and liabilities of each of the former corporations shall attach to the consolidated corporation, and may be enforced against it as if incurred or contracted by it. Held, that while the statute makes the consolidated or merged corporation personally liable for the rights or claims of creditors, it is not the intent to thereby relieve the constituent corporations of all enforceable liability, and while the creditor may proceed against the new corporation, he may, if he chooses, proceed to judgment and execution against the old corporation alone, or possibly against both.

3. CORPORATIONS ⊂⊃591 — CONSOLIDATION — ACTIONS AFTER CONSOLIDATION.

If Code 1907, § 3516, providing that corporations dissolved by forfeiture or any other cause except by judicial decree shall exist as bodies corporate for five years thereafter for the purpose of prosecuting or defending suits, settling their business, etc., has any application to corporations consolidated to form a new corporation, it does not compel a creditor whose action against a corporation is pending when the corporation is consolidated with others to pursue his action to judgment execution and satisfaction of his claim or demand within five years from the date of the consolidation, under penalty of losing the entire claim or demand or the right to enforce it.

4. ABATEMENT AND REVIVAL ⊂⊃38—CONSOLIDATION OF CORPORATIONS — ACTIONS AFTER CONSOLIDATION—STATUTORY PROVISIONS.

Code 1896, § 1151, so far as it apparently made a revivor or change of defendants necessary to prevent an abatement of an action against a corporation upon its consolidation with other corporations, was repealed by Acts 1903, p. 310, regulating corporations, which deals with the same subject, but omits the clause in question, especially as the code commissioner, the code committee, and the Legislature evidently regarded it as repealed; it being omitted from the Code of 1907.

Appeal from Circuit Court, Marion County; C. P. Almon, Judge.

Bill in equity by Marvin Pearce, as executor, against the Brilliant Coal Company and others to reach corporate assets and subject them to judgment. Decree for respondents on demurrer, and complainant appeals. Reversed, rendered, and remanded.

See, also, 169 Ala. 161, 52 South. 911, Ann. Cas. 1912B, 288; 184 Ala. 610, 64 South. 321; 192 Ala. 195, 68 South. 900.

The following is the opinion of the chancellor or trial judge, directed to be set out:

Upon consideration of this cause by the court it appears that the Aldrich Mining Company, a

---

corporation, organized under the laws of the state of Alabama, was engaged in mining coal at Brilliant, Marion county, Ala., from January 1, 1900, to April 1, 1905; that James Pearce filed a suit against said corporation on October 9, 1905, for the conversion by it of 3,000 tons of coal, and on August 18, 1914, obtained a judgment against the Aldrich Mining Company for $2,000, and that this cause was appealed to the Supreme Court, and on January 15, 1915, the Supreme Court affirmed said judgment, and execution was issued, placed in the hands of the sheriff, and returned "No property found." Since the judgment obtained, Pearce has died, and this bill is brought in the name of Marvin Pearce as his executor. It further appears from the bill and exhibits thereto that the Aldrich Mining Company, the Cane Creek Coal Company, and the Atlas Coal Company are all corporations organized under the laws of the state of Alabama, and that on December 31, 1906, all of said corporations were organized into, merged, and consolidated under the name of the Brilliant Coal Company, and under the laws of the state of Alabama; that on December 31, 1906, said suit of said Pearce against the Aldrich Mining Company was pending in the circuit court of Marion county; that upon the merger or consolidation of said corporations into the Brilliant Coal Company, said Brilliant Coal Company took possession of all of the property of the Aldrich Mining Company. The statute under which the said consolidation and merger was formed provides: "That all rights of creditors, and all liens upon the property of any of said former corporations, shall be preserved unimpaired, and the respective former corporations may be deemed to continue in existence in order to preserve the same; that all debts, liabilities and duties of each of the said former corporations shall thenceforth attach to the consolidated corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred by it." The statute quoted above is section 40 of the Acts of 1903, p. 332. This act does not repeal section 1151, Code 1896, but said section was in effect until the adoption of the Code of 1907. By said section suits that were pending against the original corporation at the time of the consolidation were not abated, but should proceed against the consolidated corporation without delay. But if the court is mistaken in this conclusion, and section 40 of said act did repeal section 1151, Code 1896, then section 53 of said act, which is section 3516, Code 1907, kept the Aldrich Mining Company in existence for five years for the purposes of section 40, unless it existed longer by order of the judge or chancellor. There is no allegation in the bill that this was done. Whether the Aldrich Mining Company went out of existence on December 31, 1906, or five years thereafter, it was out of existence long before Mr. Pearce obtained his judgment of August 8, 1914, and said judgment was therefore void and unenforceable in a court of equity.

The bill is filed under the authority of Montgomery & West Point Ry. Co. v. Branch Sons & Co., 59 Ala. 139. In that case the court permitted complainant to pursue the equitable remedy because he had no remedy at law. When the consolidation of the Aldrich Mining Company with the Brilliant Coal Company occurred, Mr. Pearce had a plain and adequate remedy at law. And, as held by Judge Walker in Nelson v. Hubbard, 96 Ala. 238, 11 South. 428, 17 L. R. A. 375: "But for this statute, equity would take cognizance, but this statute provides a new remedy for the enforcement of his debt, and a more efficacious one than is possible under the ordinary rules of equity. The remedy provided by this statute must be considered as superseding and substituted for the remedy provided by equity." When said merger and consolidation occurred Mr. Pearce did not pursue the statutory remedy, but prosecuted his case against the Aldrich Mining Company, to final judgment, long after said merger and consolidation, and now the executor of his last will and testament filed this bill of complaint to enforce the remedy provided by equity. It may be that neither Mr. Pearce nor his attorney knew of the dissolution of the Aldrich Mining Company by its merger into the Brilliant Coal Company; but, as held by Judge Walker in the Nelson Case: "Persons dealing with the corporation are to be regarded as doing so in contemplation of the possibility that the corporation may at any time be dissolved in the mode authorized by the statute. The statute provides for such a contingency as fully as if it had been specified in the contract itself as one of its conditions. In such a case, one to whom the corporation is bound by contract has no more right to complain of its dissolution in the mode prescribed by the statute. The statute provides for such a contingency as fully as if it had been specified in the contract itself, as one of its conditions. In such a case he would have no more right to complain than of the death of the natural person who was his debtor. And when he desires to enforce his demands by suit, he is as much bound to take notice of the dissolution of the corporation, and to proceed in the mode prescribed by the statute to subject its assets to the satisfaction of his friends, as he would be to take notice of the death of his individual debtor, and to proceed against his estate in the manner the law directs."

It is therefore ordered, adjudged, and decreed by the court that the demurrers to the bill be and they are hereby sustained.

S. D. Weakley, of Birmingham, A. F. Fite, of Jasper, and E. B. & K. V. Fite, of Hamilton, for appellant. John H. Bankhead, Jr., of Jasper, and John C. Forney, of Birmingham, for appellees.

MAYFIELD, J. Appellant filed this bill to enforce the payment and satisfaction of a judgment which appellant's testator had obtained against the Aldrich Mining Company, a corporation.

The appellee corporation was formed under the laws of Alabama, by the consolidation or merger of the defendant in judgment corporation and other corporations; and by such consolidation it acquired the property of the merging corporations, and, in law, became liable for the debts and obligations of the merging corporations. The aim of the bill was to reach the assets of the defendant corporation which it acquired from the Aldrich Mining Company by virtue of the agreement between it and the merging corporations, and by virtue of the statutes or acts of consolidation, or merger, of the several corporations, and to subject such assets to the payment and satisfaction of that judgment against the Aldrich Mining Company. The agreement for merging the several corporations was made on the 31st day of December, 1906, and the merger was effected under and by virtue of the general act of the Legislature of this state of October 2, 1903 (page 310 et seq.).

Appellant's intestate commenced his action against the Aldrich Mining Company on October 5, 1905, more than a year before the act of consolidation. This action has quite a his-

tory, the case having come to this court three time on appeal. See reports of the case on these appeals: 169 Ala. 161, 52 South. 911, Ann. Cas. 1912B, 288, 184 Ala. 610, 64 South. 321, and 192 Ala. 195, 68 South. 900. On the last appeal the result was to affirm a judgment for plaintiff against the defendant for $3,000, which was obtained in the circuit court on the 18th day of August, 1914. This judgment of affirmance was rendered on the 15th day of January, 1915. The judgment sought to be enforced was not obtained, therefore, until after the lapse of five years from the consolidation or merger of the corporations; and the action was never revived or made to proceed against the appellee, the merged or consolidated corporation, but proceeded to the end against the Aldrich Mining Company, which, in 1906 or 1907, was merged in the appellee corporation.

The bill was demurred to on many grounds. Among others which were sustained by the trial court were the grounds that the bill showed that the judgment sought to be enforced was void for all purposes, because the defendant in judgment had ceased to have a corporate existence, for any purpose, before the rendition of the judgment; that the defendant corporation being defunct by virtue of the merger, and the five-year period allowed by the statute for winding up its affairs having expired, the action by force of law abated, without any step to that end on the part of litigants or court. Second, that appellee, the merged or consolidated corporation, was not made a party defendant to the action, as could have been done on the application of appellant's testator, the plaintiff below, and that the plaintiff in judgment thereby elected not to proceed against appellee; and that the claim or demand originally sued upon is barred, as affirmatively appears from the averments of the bill, by both the statutes of limitations (that of six years and that of ten years). The trial court seems to have taken this view of the case made by the bill. It sustained demurrers to the bill, and complainant appeals.

The reporter will set out the opinion of the chancellor or trial judge, so that this opinion may be the more easily understood.

### Opinion.

We cannot agree with the chancellor in his holding that the judgment in the circuit court, here sought to be enforced, is void, on account of the merger of the defendant corporation into appellee corporation more than five years before the judgment was obtained, or on account of the failure to make the appellee a party defendant, or to revive the judgment against it before the filing of the bill or within the usual statutory limitations as to such proceedings. We are not willing to hold that the judgment here sought to be enforced or foreclosed is void or nonenforcea-

ble as for anything appearing on the face of the pleadings.

[1] Whether or not the bill shows a complete and adequate remedy at law is not now before us, because the record affirmatively shows that this question was not passed upon or decided by the court below. It will be time enough to consider that when the question properly reaches this court.

[2, 3] The merger or consolidation was had under our general statute of 1903 (page 310) before the codification thereof. The statute provides for preserving the rights and liens of creditors of the merging and consolidating corporations. James Pearce is shown to have had, at the date of the consolidation, a right or claim against the Aldrich Mining Company, if not a lien. The statute, in substance, if not in terms contemplated and intended to preserve these existing rights and liens, as to both persons and property, of the consolidating or merging corporations, as if no merger or consolidation had ever occurred. While the statute makes the consolidated or merged corporation also personally liable as for the rights and claims of creditors against its factor corporations, yet it was not the intent to thereby relieve such constituent corporations of all enforceable liability, and substitute the new corporation as the exclusive repository of personal or corporate liability. While the creditor may proceed in an appropriate and timely manner against the new corporation, and enforce against it the liability of the old, as a personal or corporate liability, yet the creditor is not by the statute compelled so to do. He may proceed to judgment and execution against the old corporation alone, or possibly may proceed against both, but he is not required by the statute to proceed alone against the merged or consolidated corporation. If the creditor chooses to proceed against the old and merging corporation alone, he is not required to pursue it to judgment, execution, and satisfaction of his claim or demand, within five years from the date of consolidation with the new, or else lose his entire claim or demand, or the right to enforce it.

If section 3516 of the Code, or its progenitors, apply at all to a case like this (and if it does, to what extent we do not decide), it was never intended by the lawmakers that a diligent creditor should lose his claim or demand by pursuing one or the courses provided by law, purely on account of the law's own delay. This record discloses no delay or laches on the part of the creditor, which, without the aid of a statute, would deny his right to enforce his claims. It is true that he might have proceeded earlier, and in different modes, against this appellee corporation; but such is not true as to the institution or prosecution of the claim against the original and merging corporation. It does not yet appear affirmatively that the doctrine of either laches, estoppel, or election has

barred all remedies against the appellee corporation in person, or against the property it acquired from the original corporation.

It is true that we have no exact precedent for this proceeding in this state under the present statutes or their progenitors. In the case of Birmingham Railway, Light & Power Co. v. Cunningham, 141 Ala. 470, 37 South. 689, a creditor of the original corporation had obtained a judgment before the consolidation, but, pending appeal to this court, the consolidation was effected; and it was held that a scire facias was proper to revive the judgment in the names of the administrators of the deceased plaintiff, who had also died pending the appeal, and against, or in the name of, the new or consolidated corporation. As to the latter phase of the proceeding, this court, speaking through McClellan, C. J., said:

"In our opinion, for all the purposes of this proceeding the only effect of this consolidation was to change the name of the defendant in judgment from Birmingham Railway & Electric Company to Birmingham Railway, Light & Power Company, without change of entity or identity, so that the consolidated corporation in and by the new name is the proper party respondent to the petition for scire facias, along with the sureties on the appeal bond against whom also judgment was rendered in this court. Code 1896, §§ 1202, 1204; Hirschl, Combination, etc., Corporations, 184." 141 Ala. 474, 37 South. 690.

The text cited above thus states the law on the subject:

"Corporations acquiring a unity of interests and merging their committees, officers, subscribers and their operations into one joint enterprise do not on that account cease to exist as distinct and different corporations; as such they continue to act within the spheres of their respective charters for purposes of common interest. There may be a union of interests and of stocks without the surrender of personal identity or corporate existence. Legislative recognition may identify the consolidation to be the same entity as the prior corporation, or may preserve a corporate continuity by placing the consolidation in the place of the original corporation; a change of name and acquisition of new rights do not necessarily make a new person, nor does the substitution of a new set of stockholders. The original corporation remains in existence for purpose of suit upon its own debts, and may be sued in the new name acquired by reason of the consolidation. After consolidation, the old company exists under a new name and with enlarged powers. The test in all cases is to be found from the facts and circumstances, terms of contracts, texts of statutes, intent of parties; from these it must be determined whether the original companies passed out of existence, or remained under a new name and management with enlarged powers."

Our statute applicable provides:

"Rights of creditors and all liens upon the property of any of the said former corporations shall be preserved unimpaired, and the former corporations may be deemed to continue in existence in order to preserve the same; and all debts, liabilities, and duties of each of the said former corporations shall thenceforth attach to the consolidated corporation, and may be enforced against it to the same extent as if said debts, duties, and liabilities had been incurred or contracted by it." Code, § 3506.

[4] The consolidation in this case having occurred prior to the adoption of the Code of 1907, and while the Code of 1896 was in force, it is claimed by appellee that section 1151 of the Code of 1896 applied, and that the original action abated by virtue of this section, because not revived against the appellee consolidating corporation. If this section were applicable there might be force in this contention, but as to this we do not decide, because we hold that this section was repealed by the general act of 1903, p. 310 et seq. It dealt with the same subject, and continued the first clause of this section, but omitted the latter clause, which seemed to make a revivor or change of defendants necessary to prevent an abatement of the action.

The code commissioner, the code committee, and the Legislature, of and as to the Code of 1907, evidently considered section 1151 of the Code of 1896 as being repealed, because it was omitted from the new Code, and the provisions of the general act, in lieu thereof, substituted for the section in question as well as its kindred ones. While, of course, this is not binding on this court or the lower court, in construing the question, yet it is a circumstance to be mentioned arguendo to support the construction that it was repealed by the later act. It may be that the statutes afforded the appellant or his testator remedies other and different from the one here pursued, and that other remedies would be more efficacious than this; but we are not of the opinion that the other remedies, if such there be, are exclusive, but that they are cumulative merely, if otherwise there be equity in this bill, which we do not now decide. It is proper, however, here to say that our statutes have been considerably changed as to proceedings in equity like that in the case of Nelson v. Hubbard, 96 Ala. 238, 11 South. 428, 17 L. R. A. 375, which rule is relied upon by appellee, and was quoted by the chancellor, to the effect that:

"But for this statute equity would take cognizance, but this statute provided a new remedy for the enforcement of his debt and a more efficacious one than was possible under the ordinary rule of equity. The remedy provided by this statute must be considered as superseding and substituted for the remedy provided by equity."

Since the date of that decision the Code of 1907 has been adopted, which contains several provisions conferring equity jurisdiction where otherwise it would not have existed. Among these is section 4829 of the Code, which reads as follows:

"The statutory modes provided in this Code for the enforcement of liens are not the exclusive modes of enforcing such liens; but are cumulative merely. Any lien may be enforced in the manner provided by statute, if so provided, or in equity, or by attachment for enforcing liens, or by any similar mode or remedy existing at common law."

We do not now mean to decide that a lien is, or is not shown, such as to invoke the above statute, nor that the present bill has not other defects; but we say this merely to show that the statutes of this state as to equitable jurisdiction are now different from what they were under the Code of 1896.

As the decree must be reversed, it is not improper for us to say that if the averments of this bill are true—and on demurrer they must be so treated—the very pertinent question is presented: Why is any proceeding, in a court of law or of equity, against either of the respondents, in personam, or in their corporate capacity, necessary to obtain a satisfaction of this judgment? Unquestionably they are proper parties, but are they necessary ones, under the law as above quoted from the case of Birmingham Railway, Light & Power Co. v. Cunningham, supra, 141 Ala. 474, 37 South. 689?

It results that the decree below must be reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.