329 So.2d 73

**Shearn MOODY, Jr.**

**v.**

**STATE of Alabama ex rel. Charles H. PAYNE, Commissioner of Insurance, etc.**

**SC 1269.**

Supreme Court of Alabama.

Feb. 27, 1976.

Drayton Nabers, Jr., and William A. Robinson, Birmingham, for appellee, Protective Life Ins. Co.

James W. Webb, Montgomery, for appellee, Charles H. Payne, Commissioner of Insurance for the State of Ala. and Receiver of Empire Life Ins. Co. of America.

Mark B. Polson, Birmingham, for appellant, Shearn Moody, Jr.

MERRILL, Justice.

■ This case is concerned with the propriety of the issuance of an injunction whereby Shearn Moody, Jr. was enjoined from interfering with the receivership proceedings of Empire Life Insurance Company of America [hereinafter Empire], an Alabama corporation. Some background information is necessary to place the instant case in proper perspective.

Our records reveal that the State of Alabama, in April, 1972, filed a complaint in the Circuit Court of Jefferson County against Empire requesting that the company be placed in receivership because it was impaired and insolvent. Thereafter, following a hearing before Judge William C. Barber, Empire was placed in receivership by an order dated June 29, 1972, and John G. Bookout, the Commissioner of Insurance for the State of Alabama, was named receiver. Bookout was succeeded as commissioner by Charles H. Payne on January 20, 1975. Empire was also placed in receivership in the States of Arkansas, Montana and Texas with ancillary receivers appointed in those states. No appeal was taken by Empire or any of its officers from the decision placing it in receivership.

In May, 1973, the receiver petitioned the receivership court for instructions on seeking approval of the various federal and state regulatory agencies for possible advertisement for bids for complete reinsurance of the business of Empire to protect the policyholders. This order was granted. Following the approval of the Federal Trade Commission, the Securities Exchange Commission and state regulatory agencies, the receiver, on request of commissioners and receivers of other interested states, filed a petition for .instructions regarding reinsurance, asking the circuit court to enter an order permitting the receiver to adver-

tise for and secure bids for the complete reinsurance of all of the business of Empire. This order was granted.

Following advertisement in various media, bids were taken in compliance with orders of the court. Bids were submitted by Protective Life Insurance Company [hereinafter Protective] and two other life insurance companies in addition to a bid submitted by Shearn Moody, Jr., of Texas, President, Chairman of the Board and principal stockholder of Empire. Another bid was submitted by an individual. Following a hearing of all bidders before the interested commissioners and receivers of the various states, the bid of Protective was recommended to the court in a petition filed in January, 1974, for liquidation and reinsurance without dissolution under provisions of the Alabama Insurance Code, Act No. 407, § 624, Acts of Alabama 1971, p. 996, listed in the Recompilation as Tit. 28A, § 624(2), on the grounds that further efforts to rehabilitate the company would be useless.

Moody objected to the reinsurance and liquidation of Empire and was granted the right to intervene.

During the course of the three-week hearing, Protective was also made a party for intervention. Following extensive hearing and briefing by all parties, the trial court, on June 14, 1974, entered an order granting the receiver's petition to liquidate and reinsure the business of Empire into Protective. The trial court found, *inter alia*, that Empire was impaired in excess of ten million dollars, insolvent in excess of six million dollars and that the financial condition of Empire was "rapidly deteriorating."

Intervenor Moody gave notice of appeal, filed a motion for supersedeas bond and motion for new trial. These motions were overruled. The appeal was taken on July 25, 1974; the certificate of appeal was received in this court on August 6, 1974, but the transcript of the record has not yet

been received. We avert to this later in the opinion.

## I. The Injunction.

On December 27, 1974, John G. Bookout, the Commissioner of Insurance for the State of Alabama, applied for and received a temporary restraining order against Moody and others. The order prevented the filing, sponsoring or aiding of any lawsuit or legal claim relating to the affairs of Empire, the treaty of assumption and bulk reinsurance or the decree approving the treaty. To supplement his application, Bookout attached affidavits concerning the multiplicity of litigation instituted by Moody, threats by him to institute further litigation, and the deposition of one Willie Allmon. The hearing was set for January 6, 1975.

Commissioner Bookout testified at the hearing; there was no objection to his testimony, and there was no cross-examination. His testimony is, therefore, uncontroverted and undisputed. He testified that he has been subjected (both as receiver of Empire and individually) to numerous lawsuits and proceedings filed by Moody or Moody lawyers, all of which related to the Empire receivership and all of which were filed subsequent to the plenary hearing conducted by the receivership court in April, 1974, which culminated in the June 14, 1974 order determining that Empire was insolvent and that reinsurance of the Empire policies was necessary to protect the interests of policyholders. He also testified as to the following separate lawsuits or proceedings filed by Moody or Moody's lawyers and, as to each of them, Bookout testified that said litigation substantially depleted the assets of the receivership estate and, further, resulted in irreparable loss to the receivership in terms of seriously interfering with implementation of the receivership court's orders and supervision of the receivership by Bookout:

A. *Moody v. Empire,* No. 112,034, a suit filed in state court, Galveston County, Texas, in which Moody sought to prevent the transfer of the principal asset of Empire to Protective.

B. *Meyers v. Moody,* C.A. 3–5678–D, a suit pending in federal court, Northern District of Texas, in which Moody filed a cross-action against Bookout as receiver of Empire and individually. Moody's cross action alleged mismanagement of the receivership estate by Bookout and alleged that Bookout put Empire in receivership for political reasons. [The issues raised by Moody's cross action had been fully litigated and decided adversely to Moody in the April, 1974 hearing before the Alabama Receivership Court.]

C. Extraordinary proceedings in this court and one federal suit:

(1) In *Ex parte Moody,* S.C. 962, Moody sought that this court approve a supersedeas bond pending his appeal from the June 14 decree; in the alternative, Moody sought the issuance of a writ of mandamus to compel the receivership court to permit supersedeas. All relief sought by Moody was denied.

(2) Moody then filed *Moody v. Bookout,* Civ. No. 74–328–N, in which Moody sought federal district court review of the foregoing decisions of this court, ostensibly on constitutional grounds. The Federal District Court for the Middle District of Alabama summarily dismissed said action on the grounds that Moody was pursuing the matter in the state courts of Alabama.

(3) Moody nevertheless filed *Moody v. Bookout,* S.C. 1032, in which Moody attempted, for the fourth time, to relitigate the denial of supersedeas in connection with his appeal from the June 14, 1974 decree. This attempt was also rejected by this court.

D. *Allmon v. Bookout,* Civ. No. 74–377–N, was filed in the name of Willie Allmon, an Arkansas policyholder of Empire. This suit alleged that Bookout and Protective caused Allmon to lose 35% of the cash value of his policy. Bookout testified that the records of Empire affirmatively show that the cash-value position of the Allmon policy was unaffected by the receivership of Empire or by the reinsurance of Empire's policies by Protective.

The deposition of Willie Allmon was introduced into evidence at the January 6 hearing upon which this appeal is based, without objection from Moody's counsel. It establishes unequivocally that the Allmon lawsuit was solicited by Moody's agents. The deposition of Allmon, a farmer from Star City, Arkansas, who has only a sixth-grade education, is replete with his sworn testimony that Allmon thought Empire Life Insurance Company was representing him in the federal suit; that Allmon mistakenly believed he was represented by Empire lawyers; that maintenance of the suit was not costing Allmon any money; and that neither Bookout nor Protective had ever done anything to damage or injure Allmon.

The deposition of Ernest Cross, the insurance agent who sold Willie Allmon his Empire policy, was received into evidence, over the objection of Moody's lawyer. Cross's deposition establishes that Cross believed that Dale Major, an out-of-state Moody attorney named in the January 6 injunction, was an attorney with and legal adviser for Empire; that Major procured from Cross the name and residence of Allmon; and that Major represented himself to Allmon as an Empire attorney.

E. *State of Texas v. Empire,* No. 198,-374, is the ancillary receivership proceeding pending in the District Court of Travis County, Texas, in which Empire's ancillary receiver for the State of Texas sought the approval of the Texas ancillary receivership court to consummate the re-insurance agreement whereby Protective assumed the policies of Empire.

After listing the various suits, Bookout testified to Moody's threats. He said:

"[Shearn Moody] said to me, in words to this effect, that Mr. Bookout, we are just getting started on you.

"I intend to sue you personally. My actions will be of a personal nature against you to carry over after you have left the office [of Commissioner of Insurance]. * * * we killed Crawford Martin and somebody else, * * * he died with a heart attack the day after he signed his deposition, and we are beginning on you, and we are going to keep on if it takes us 50 years."

After the close of the evidence and argument of counsel, the injunction was made permanent. In his opinion, Judge Barber stated in part:

"The order that was issued temporarily by this Court, does enjoin the filing of other suits and other motions in this case, but there is a stipulation in the order that these should not be filed without the permission of the Court.

\* \* \* \* \* \*

" * * * I think that this court would have a right to refuse the proposed litigation with an eye to see whether or not it is a matter of harassment, a matter which would obstruct the orderly carrying out of the previous decrees and orders of this court by the Receiver emanating from the lengthy hearing that was held last spring here in this court.

\* \* \* \* \* \*

"It is a feeling of this Court that based upon the evidence that has been introduced at this hearing and through the depositions that have been presented to me, that there is a very evident effort at delay and harassment on the part of Shearn Moody in his activities in this case.

\* \* \* \* \* \*

"There has been no evidence to controvert the statement that has been made by Mr. Bookout in his testimony. There has been no evidence to controvert the statement[s] made in the depositions that have been presented, which is the basis of my ruling in this case."

The court concluded:

"It is ORDERED, ADJUDGED and DECREED that

(1) any and all policyholders, stockholders and agents, present or former, of Empire Life Insurance Company of America, and

(2) Shearn Moody, Jr., his officers, agents, servants, employees and attorneys (including, but without limitation, Donald L. Collins, A. Eric Johnston, Dale R. Major, Scott E. Manley, A. R. Schwartz, and Thomas R. Beech),

and those persons in active concert or participation with any of the foregoing be permanently restrained and enjoined from filing, financing, sponsoring, initiating, or aiding, in whole or in part, in any way the filing of any lawsuit, complaint or legal claim, or any amendment to any complaint or legal claim in any court wheresoever located on behalf of any party whatsoever against:

(1) John G. Bookout, as an individual;

(2) John G. Bookout as Receiver of Empire Life Insurance Company of America, his officers, agents, employees and attorneys;

(3) the Ancillary Receivers of Empire Life Insurance Company of America, their officers, agents, employees and attorneys;

(4) Protective Life Insurance Company, its officers, agents, employees and attorneys; or

(5) any other person or legal entity which lawsuit or claim relates to or affects directly or indirectly:

(a) the affairs of Empire Life Insurance Company of America;

(b) its receivership;

(c) its Receiver;

(d) the Treaty of Assumption and Bulk Reinsurance, as amended, between the Receiver and Protective Life Insurance Company; or

(e) the implementation of any order or decree of this Court in this proceeding,

unless such policyholders, stockholders or agents or said Shearn Moody, Jr., his officers, agents, servants, employees and attorneys and those persons in active concert or participation with them shall first receive the prior approval of this Court."

Title 28A, § 624(2), provides in Chapter 28, Rehabilitations and Liquidations, as follows:

"(2) The court may at any time during a proceeding under this chapter issue such other injunctions or orders as may be deemed necessary to prevent interference with the commissioner or the proceeding, or waste of the assets of the insurer, or the commencement or prosecution of any actions, or the obtaining of preferences, judgments, attachments or other liens, or the making of any levy against the insurer or against its assets or any part thereof."

The injunction is well within the statutory authorization, and the undisputed evidence, both oral and documentary, clearly supported the issuance of the injunction.

The requirement that parties who desire to bring suit against a receiver must first obtain permission from the receivership court is not new in Alabama. In *Ex parte Davis,* 230 Ala. 668, 162 So. 306 (1935), this court said:

" * * * 'Property in the hands of a receiver being in the custody of the court, the broad general rule established by the weight of authority is that a receiver appointed by judicial authority cannot, in the absence of a statute to the contrary, be subjected to suit without leave of the court appointing him.' * * * 'A receiver being an officer of the court, acting under its direction, and in all things subject to its authority, it is contrary to the established doctrine of courts of equity to permit them to be made a party defendant to litigation, unless by consent of the court appointing him. And it is in all cases necessary that a person desiring to bring suit against a receiver in his official capacity, should first obtain leave of the court by which he was appointed, since the courts will not permit the possession of the receiver to be disturbed by suit or otherwise, without its consent or permission. The rule is established for the protection of receivers against unnecessary and expensive litigation, and in most instances a party aggrieved may have ample relief by application on motion to the court appointing the receiver. And when an action is instituted against a receiver in his official capacity, without first obtaining leave of the court, the plaintiff in such action is guilty of a contempt of court and will be punished accordingly.'

"This court is firmly committed to the above rule. *Montgomery, Trustee v. Enslen, Receiver,* 126 Ala. 654, 28 So. 626; *Baker v. Carraway,* 133 Ala. 502, 31 So. 933."

The rationale for requiring permission of the receivership court is to permit that court the opportunity to satisfy itself that the suit or legal proceeding which is planned will not unduly interfere with the receiver or the receivership proceedings.

The mere fact that the injunction was made permanent does not, in an injunction as issued in the instant case, mean that such injunctions do not remain subject to clarification and modification by the trial court. In *Ex parte Myers,* 246 Ala. 460, 21 So.2d 113 (1945), this court said:

" * * * the court which has rendered a final decree in the form of a permanent or perpetual injunction in respect to future activities may open and modify it where the circumstances and situation of the parties are shown to have so changed as to make it just and equitable to do so. * * * "

This court quoted, with approval, from *Sontag Chain Stores Co. v. Superior Court*, 18 Cal.2d 92, 113 P.2d 689, 690, as follows:

" * * * 'this is so because the decree, although purporting on its face to be permanent, is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference. Such a decree, it has uniformly been held, is always subject, upon proper showing, to modification or dissolution by the court which rendered it. The court's power in this respect is an inherent one.' * * * "

The record shows no request by Moody to file a suit against the receiver or any request to the trial court for clarification or modification.

■ Appellant Moody argues in brief that the injunction was overbroad. But the record does not show that that question was raised in the court below.

■ The trial court will not be put in error unless the matter complained about was called to its attention by objection or by other appropriate method. *Colburn v. Mid-State Homes, Inc.*, 289 Ala. 255, 266 So.2d 865; *Pearce v. Brilliant Coal Co.*, 200 Ala. 630, 77 So. 4.

"The general rule is that the appellate court, on review of injunction orders and decrees, will consider only such questions as are raised in the court below, and properly preserved and presented. Where that is not done, the court may refuse to consider an objection * * * that the injunction is too broad in its operation, * * * *." 42 Am.Jur.2d, Injunctions, § 350, p. 1158.

The injunction was not only justified but was necessary to preserve the assets of Empire.

## II. Object of Ancillary Suits Filed by Moody.

The principal asset of Empire was the Libbie Shearn Moody Trust. In *Moody v. Bookout*, Middle District of Alabama, Case No. 74–377–N, Moody's prayer for relief asked that the receiver and Protective Life Insurance Company be restrained from in any way disposing of any of Empire's assets until a final decision on appeal in the Supreme Court of Alabama; and that these defendants be enjoined from the execution and carrying out the order of Judge Barber dated June 14, 1974.

In *Moody v. Moody National Bank and Empire Life Insurance Company* in State District Court, Galveston, Texas, Case No. 112,034, Moody's prayer for relief asked that the court reform the terms of the agreement whereby Empire acquired Moody's interest in the Libbie Shearn Moody Trust "to conform with the intent of the parties and to expressly provide that neither Empire nor any one acting for it may assign such interest in the Libbie Shearn Moody Trust; * * * ."

It is evident that the extraordinary hearings in this court, S.C. 1125, January 22, 1975; S.C. 1221, April 23, 1975; S.C. 1200, March 26, 1975 and November 11, 1975, were either directly or indirectly attempts by Moody to nullify the action of the trial court on June 14, 1974, or to get the possession of the Libbie Shearn Moody Trust out of the receivership and back into Moody's possession.

This court has consistently refused to grant Moody the relief sought and, insofar as we are informed, no other jurisdiction,

either state or federal court to which he has applied, has granted him any such relief.

## III. The Donovan Case.

█ Most of appellant's brief and most of his oral argument were devoted to the proposition stated in *Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), that "state courts are completely without power to restrain federal-court proceedings in *in personam* actions." This principle is not new to us. *Donovan* was cited and applied by this court in *Johnson v. Brown-Service Ins. Co.*, 293 Ala. 549, 307 So.2d 518 (1974). [We agree that it states the law and based on the briefs, counsel for all parties agree that it is the law.]

Moody made this argument in trying to show that the filing of the case of *Allmon v. Bookout* was not in violation of the injunction issued by Judge Barber.

It is interesting to note that the same paragraph in which the previous quote appears begins with some careful writing and limitation by Justice Black, the author of the opinion:

"Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. That rule has continued substantially unchanged to this time. An exception has been made in cases where a court has custody of property, that is, proceedings *in rem* or *quasi in rem*. In such cases this Court had said that the state or federal court having custody of such property has exclusive jurisdiction to proceed. *Princess Lida v. Thompson*, 305 U.S. 456, 465–468, 59 S.Ct. 275, 280, 281, 83 L.Ed. 285 [291]. In Princess Lida this Court said 'where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other.' Id., 305 U.S. at 466, 59 S.Ct. at [280] [83 L.Ed.2d 291]. See also *Kline v. Burke Construction Co.*, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226. * * *"

We have already shown that these suits were repeated attempts to remove assets from the *res* of the receivership and liquidation proceedings. The federal courts have consistently followed the rule that proceedings involving the liquidation of the business and assets of an insurance corporation are *in rem* or *quasi in rem* proceedings. *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 194–95, 55 S.Ct. 386, 388, 79 L.Ed. 850, 854–55; *Jacobs v. DeShetter*, 465 F.2d 840 (6th Cir.); *Gillis v. Keystone Mut. Casualty Co.*, 172 F.2d 826, 829 (6th Cir.), cert. denied, 338 U.S. 822, 70 S.Ct. 67, 94 L.Ed. 499; *Holley v. General American Life Ins. Co.*, 101 F.2d 172 (8th Cir.), cert. denied, 307 U.S. 615, 59 S.Ct. 1038, 83 L.Ed. 1496; *Liberty National Ins. Co. v. Reinsurance Agency, Inc.*, 307 F.2d 164, 168 (9th Cir.), *Hutchins v. Pacific Mut. Life Ins. Co.*, 20 F.Supp. 150, 152 (S.D.Cal.), aff'd 97 F.2d 58, 60 (9th Cir.).

█ This same question was raised in *Allmon v. Bookout*, Middle District of Alabama, No. 74–377–N. In his opinion, filed April 24, 1975, Judge Varner discussed *Hutchins*, supra, and we quote his statements with approval:

"It appears to be the settled rule with respect to suits in equity for the control by receivership of the assets of an insolvent corporation that the Court first assuming jurisdiction may maintain and continue to exercise that jurisdiction to the exclusion of any other court. (Citations omitted.)

"This jurisdictional priority principle is buttressed by the case of *Hutchins v.*

*Pacific Mutual Life Ins. Co.*, 20 F.Supp. 150 (S.D.Cal.1937), affm'd. 97 F.2d 58 (9th Cir. 1938). In that case prior to any suit being filed in federal court, the State Court vested title of all the assets of an alleged insolvent domestic insurance company in the Insurance Commissioner of California pursuant to his petition. After the State Court—again pursuant to the Commissioner's petition—approved liquidation of the insolvent company on the grounds that conservation was futile, the Commissioner filed a plan of reorganization whereby a new insurance company was to acquire the assets of the insolvent company. The plan, after approval by the State Court, was fully executed.

"Subsequently, suit was brought in federal court seeking reconveyance of the assets on the grounds that the entire State proceeding was fraudulent and, therefore, that the State Court lacked jurisdiction. The District Court, in dismissing the federal action, stated:

" 'This action, and the one in the state courts, are actions in rem, or, at least, quasi in rem. The relief sought is primarily concerned with the assets in question. The rule in such cases is that the court first acquiring jurisdiction of the res has exclusive jurisdiction.' 20 F.Supp. at 152."

One John S. Bleker, Jr. was granted to intervene as a plaintiff with Allmon. Motion for summary judgment for defendants was granted.

■ We are convinced that Judge Barber did not violate either the letter or the spirit of *Donovan.*

### IV. The Allmon Case—*Almon v. Bookout*, No. 74–377–N.

We have already referred to this case and pointed out that although it was brought in Allmon's name, he was merely an unwitting front for Moody. We were told on oral argument that after appeal had been taken to the Fifth Circuit, Allmon cancelled his policy and dropped out of the case and that on November 18, 1975, the Fifth Circuit vacated the appeal and remanded the cause to the district court for appropriate findings of fact and conclusions of law as to whether the appeal had been mooted.

It is appropriate to show that the prayer for relief in the original bill in *Allmon* asked that the defendants be enjoined from consummating the reinsurance agreement; that Bookout be enjoined from action which might affect Allmon's rights as policyholder or creditor; and in the alternative, joint and several damages of $40,000,000. Once again, Moody was attempting to stop the liquidation and to regain possession of the principal assets of Empire. The mere fact that in the alternative he prayed for damages does not change the main thrust of the suit from at attempt to secure possession of the assets of Empire.

■ Counsel mention in briefs an amendment to the complaint in the Allmon case. The amendment is not in the transcript before us and, being *de hors* the record, cannot be considered. *Coleman v. Estes*, 281 Ala. 234, 201 So.2d 391; *Blanton v. Blanton*, 276 Ala. 681, 166 So.2d 409; *Cooper v. Adams*, Ala., 322 So.2d 706.

### V. The Appeal in the Original Case.

Earlier in the opinion, we stated that the notice of appeal from the June 14, 1974 order in the original case was taken on July 25, 1974, but had never been perfected. This fact is no part of the instant appeal on the injunction question, but we feel constrained to comment on it.

The appeal in the original case should settle most of the questions in this litigation, but Moody has evidently sought to try his case in this court piecemeal in a succession of requests for extraordinary writs. The suits in other jurisdictions

previously listed were also filed after the appeal was taken. At an extraordinary hearing on January 22, 1975, a member of this court asked counsel for Moody when the transcript of the record of the appeal on the original case would be filed in this court. The answer was that it should be here in about thirty days. Later, at an extraordinary hearing in April, 1975, new counsel represented Moody and the question was asked again when the transcript could be expected and the same reply "in about thirty days" was given. We considered then and still consider that the answer given by counsel on both occasions were made in good faith. Counsel answering the second time withdrew from the case soon thereafter.

In August, 1975, motions to dismiss the appeal were filed but the motions were denied. One of the reasons for the denial was that nowhere was there any writing by this court that attempted to list the harassing and delaying tactics employed by Moody. We have not listed all of them here but we have tried to mention most of them. We did not want to put him in a position to go to some other jurisdiction, either state or federal, with the complaint that this court had denied him an appeal by dismissing his appeal in the most important of all suits.

But now, in this opinion, we have tried to give a sufficient account of the many maneuvers that have taken place in this litigation, and a sufficient compilation of events to counter any claim of summary denial of Moody's rights to be heard and to have his appeal decided.

We do not intend to be as lenient in the future as we have been in the past, regardless of the changes in counsel. The record in the original case must be filed within a reasonable time of the publication of this opinion.

The order and injunction issued by Judge Barber, dated January 6, 1975, is due to be, and is, affirmed.

AFFIRMED.

HEFLIN, C. J., and MADDOX, JONES and SHORES, JJ., concur.