This is an appeal from an adjudication of insolvency, an order of liquidation and approval of a reinsurance agreement as ordered by the Circuit Court of Jefferson County. We affirm.
The material facts of this case are reported in Moody v.State ex rel. Payne, Commissioner, 295 Ala. 299, 329 So.2d 73
(1976), thus only a brief factual review is necessary here.
On April 13, 1972 the Commissioner of Insurance of the State of Alabama instituted a receivership proceeding in the Circuit Court of Jefferson County against Empire Life Insurance Company, an Alabama corporation. The trial court placed Empire in receivership on June 29, 1972, appointed the Commissioner as receiver, and on September 12, 1973 entered an order authorizing him to solicit offers from other insurance companies for the reinsurance of Empire. Later, in January, 1974 the receiver petitioned the Court for an order of liquidation of Empire and for approval of a reinsurance agreement presented by Protective Life Insurance Company, which later intervened. Shearn Moody, chairman of the board and the largest single stockholder of Empire, intervened. After a hearing on the receiver's petition, the relief requested was granted on June 14, 1974.
On October 15, 1974, Moody filed a motion, later amended, under Rule 60 (b), ARCP, to introduce new evidence establishing the solvency of Empire as of the date of the liquidation decree. This motion was overruled on November 22, 1974. Subsequently, the receiver petitioned for approval of an amendment to the reinsurance agreement. This petition was granted over Moody's objections, and on April 10, 1975, the trial court by decree authorized the receiver to execute the amendment.
Essentially, Moody raises three issues: (1) that the trial court erred in denying Moody's 60 (b) motion; (2) that policyholders of Empire were discriminated against as a result of the trial judge's reinsurance order; and (3) that the trial court abused its discretion in ordering liquidation and reinsurance. We shall take up the issues presented seriatim.
Moody contends that the trial court erred in denying his Rule 60 (b) motion for relief from the decree of June 14, 1974. Evidence he obtained from a post-judgment appraisal of one of Empire's assets, an interest in the Libbie Shearn Moody Trust, establishing an asset value of approximately $14,000,000 instead of the $4,250,000 value given it by the Commissioner, he asserts, justified a new hearing. The appraisal referred to in his motion was made by Mr. Harold Crandall, who had testified as an expert witness for Moody at the April, 1974 hearing. Although the Crandall appraisal was referred to in the motion as Exhibit B, it was neither attached to the motion nor submitted to the Court. Indeed, on November 15, 1974 when Moody's attorneys argued the motion, they submitted a different appraisal, one made *Page 163 
by Dr. Joseph Trosper. Trosper's appraisal expressly recited that its author had not been contacted by Moody until October 18, 1974, three days after Moody's Rule 60 (b) motion was filed. Moody did not explain why this appraisal could not have been either the subject of his motion or procured prior to the April hearing.
Rule 60 (b)(2), ARCP, authorizes relief from a final judgment for:
. . . newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial. . . . (Emphasis supplied.)
Was appellant's evidence "new" or "newly discovered?" There can be no Rule 60 (b)(2) relief for evidence which has come into existence after the trial is over simply because such a procedure would allow all trials perpetual life. "Newly discovered evidence" means evidence in existence at the time of trial of which the movant was unaware. Prostrollo v. Univ. ofS. Dak., 63 F.R.D. 9 (D.C.S.D. 1974). And for a litigant to obtain a new trial on the ground of newly discovered evidence, it must appear that his reasonable diligence before trial would not have revealed this evidence which he failed to discover.Plisco v. Union Ry. Co., 379 F.2d 15, 16 (CCA 3rd 1967). Hence, the trial court did not abuse its discretion in denying Moody's motion since this evidence was not even created until after October 18, 1974, over four months after the decree ordering liquidation and approving the reinsurance treaty. Any attempt by Moody to explain away his unawareness would have been inapt in those circumstances.
Appellee contends that Moody's assertion of discrimination against the policyholders fails because Moody did not raise this issue properly in the trial court, that is, that discrimination was raised for the first time in Moody's objections to the trial court's decree authorizing execution of the agreement to effectuate the reinsurance treaty, issued on April 10, 1975, almost a year after the trial court had approved the reinsurance agreement. This position overlooks the fact that the trial court, trying the case under equity rules, expressly gave the parties a standing objection to "every. bit of evidence" and "to every ruling." In this posture we consider that the objection was timely made. Next, the appellee maintains that the trial court was not required to allow the objection of discrimination because Moody himself was found by the trial court to be in open contempt for violating the injunction referred to in 295 Ala. 299, 329 So.2d 73, 10 ABR 543, 546-554 (1976). While it may be true as a general proposition that "[a] party in contempt is not entitled to insist upon a hearing or trial of the case out of which the contempt arose until he first purges himself of the contempt,"Wilkinson v. McCall, 247 Ala. 225, 23 So.2d 577 (1945), nevertheless for due process reasons "[t]he power to deny a hearing to a person in contempt does not include the power to refuse to such person in contempt the right to defend in the main case on the merits." McCollum v. Birmingham Post Co.,259 Ala. 88, 65 So.2d 689 (1953). By objecting to discrimination against policyholders, Moody appears to have been doing just that, defending such interest as he claims in the main case on the merits of the reinsurance agreement.
Appellees assert further that Moody has no standing to complain of the trial court's approval of the reinsurance agreement. On the other hand, Moody contends that his position as the largest single stockholder of Empire, and as a creditor of Empire, gave him the standing to challenge the agreement which, he contends, "deprives stockholders of their entire equity without providing them with any benefits in return . . . and which deprives creditors of their contractual rights with Empire."
Of course Moody must have some direct interest in the wrongs he alleges, otherwise he has no standing to complain. Cf.Peterson v. Hamilton, 286 Ala. 49, 237 So.2d 100 (1970); U.S.v. 936.71 Acres of Land, 418 F.2d 551 (CCA 5th 1969). The record does not reveal that prior to this appeal Moody has ever claimed to be a policyholder of Empire. His claim to be a creditor is based upon a debenture bond *Page 164 
which, he asserts, he received from Empire and which is alluded to as part of an exhibit introduced at the 1972 hearing, and a guaranty of an indebtedness of Credit Factoring, Inc. made by Empire to W.L. Moody and Company, Bankers, of which Moody contends he is sole owner. But Moody never did plead his interest as a creditor prior to the April, 1974 hearing when liquidation of Empire was ordered and approval of the reinsurance agreement was granted by the trial court, and it is now too late to bring to the trial court's attention any such claimed interest. Had he properly asserted this standing, nevertheless the reinsurance agreement does not appear discriminatory. The policyholders, some forty thousand in number, result in part from acquisitions and mergers of many insurance companies with Empire, and they represent many different insurance plans. The reinsurance plan contains provisions which accommodate the various policy distinctions. To be sure, all of the policies are not alike, and the law does not require that they be treated alike. Different classifications based upon substantial differences are not unlawful discrimination. State v. Pure Oil Co., 256 Ala. 534,55 So.2d 843 (1951); Carpenter v. Pac. Mut. Life Ins. Co.,10 Cal.2d 307, 74 P.2d 761 (1937); affirmed Neblett v. Carpenter,305 U.S. 297, 59 S.Ct. 170, 83 L.Ed. 182 (1938).
Approximately one-half of the Empire policyholders reside in Texas, and most of Empire's physical assets are located in that state. From an order issued by the 53rd Judicial District Court of Texas ordering the Texas ancillary receiver to cooperate in the execution of the reinsurance agreement, Moody appealed to the Court of Civil Appeals of Texas, claiming unlawful discrimination among Empire's policyholders and creditors. Citing the voluminous testimony relating to the fairness of the agreement and the special provisions formulated to produce equitable benefits for each group, that court found no discrimination. We agree. Indeed, it is difficult to imagine any other course, since the policyholders before and after the agreement, had only the right to file a claim against the receiver of the insolvent company for the amount of the cash value of the policies. Carpenter v. Pac. Mut. Life Ins. Co.,supra. See also Fletcher v. Tuscaloosa Fed. Sav. Loan,294 Ala. 173, 314 So.2d 51 (1975).
The record in this case reveals that Empire Life Insurance Company of America was in precarious financial condition some three years before it was placed in receivership. A panel composed of the insurance commissioners of five states attempted to effect rehabilitation without receivership, and although some improvement resulted, an examination conducted by the insurance departments of Texas, Alabama and South Dakota found Empire insolvent in excess of six million dollars and impaired in excess of ten million dollars. It was then that formal receivership proceedings were commenced and the then commissioner of insurance of Alabama was appointed receiver. Because of the six million dollar insolvency, the trial court restricted payments of cash values of policies to fifty percent when voluntarily withdrawn prior to death. Moody did not contest the finding of insolvency and made no appeal from the trial court's ruling of June 29, 1972. Apparently Moody accepted the insolvency finding because when the receiver obtained approval from the lower court to solicit reinsurance proposals, Moody was one of those who submitted plans for the rehabilitation of the company. Moreover, Moody made no issue of Empire's insolvency during the lengthy hearing in April, 1974 when the issue of rehabilitation or reinsurance was aired. Accordingly, Moody's attempts to raise that issue on this appeal must also fail. Dennis v. Hines, 262 Ala. 541,80 So.2d 616 (1955).
The record reveals more than ample evidence upon which the trial court could have determined that further efforts at rehabilitation would be useless, and that reinsurance was necessary to prevent loss of all policyholder benefits to them. The Protective Life Insurance Company was one of those tendering a reinsurance agreement, and there is evidence in the record of a comparative analysis establishing it as the better of those proposed. Protective's plan *Page 165 
guaranteed payment of all death benefits, as well as all other maturity benefits, on all Empire policies. It also provided for full payment of all cash benefits accruing after September 15, 1972. This would guarantee to all policyholders who continued to pay premiums their full policy benefits which would be attributable to their current premiums, i.e., cash surrender value, loan value, etc. It provided for a limitation on those cash benefits which policyholders could exercise voluntarily, simply because Empire's assets were worth much less than the reserve liabilities which Protective would assume. The effect of the "moratorium," thirty-five percent, later increased by the trial court to fifty percent because of the expense of defending Moody's numerous lawsuits, would be to reduce the reserves Protective would have to establish. However, Protective agreed to a ten-year limit upon the moratorium, thus providing full policy benefits at the end of ten years to policyholders accepting the plan. In executing its plan, Protective agreed to place with the receiver an amount of assets equal to the reserve liability of every policy of those policyholders rejecting the plan, less the moratorium amount. Because such a payment by Protective represented the value of the agreement to accepting policyholders as well, both classes of policyholders, those accepting and those rejecting, were treated equally. Protective further agreed to make an annual calculation of the ratio of Empire's assets to its reserve liabilities and to reduce the amount of the moratorium as that ratio improves. Also, Protective agreed to receive no profit until this moratorium is eliminated and all policyholders' benefits are restored to accepting policyholders. Any profits were to be added to Empire's assets.
Non-policyholder creditors whose claims were not assumed by Protective were provided for by having the receiver retain from the assets of Empire a two million dollar fund for the payment of their claims. This fund was specified in the advertisements for reinsurance bids, and the evidence is uncontroverted that it is sufficient for the equitable payment of such claims.
Under the facts of this case we cannot state that the trial court abused its discretion by ordering liquidation and reinsurance. The commissioner of insurance has followed the applicable statutory procedures of Title 28A, Alabama Code, relative to these delinquency proceedings, and the evidence adduced sufficiently established insolvency in the first instance, the necessity for liquidation, and a fair and equitable reinsurance plan thereafter. The findings and conclusions of the trial court are due to be affirmed. Stephensv. Stephens, 280 Ala. 312, 193 So.2d 755 (1966); First Nat.Bank of Birmingham v. Brown, 287 Ala. 240, 251 So.2d 204
(1971).
AFFIRMED.
TORBERT,[1] C.J., and MADDOX, FAULKNER and SHORES, JJ., concur.
[1] Chief Justice TORBERT was not a member of the Court at the time this case was orally argued. However, he has carefully listened to the tape recordings of oral argument and studied the briefs. Code of Alabama, Tit. 13, § 7; Alonzo v. State exrel. Booth, 283 Ala. 607, 219 So.2d 858.